Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

*Attorneys for Plaintiffs and Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT GRAY, and MARKUM GEORGE, individually, and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BMW OF NORTH AMERICA, LLC and BMW AKTIENGESELLSCHAFT,<br><br>　　　　　Defendants. | **Civ. Ac. No.: 2:13-cv-03417-WJM-MF**<br><br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>AND JURY TRIAL DEMAND** |

**INTRODUCTION**

1.　　Plaintiffs Robert Gray and Markum George (collectively, "Plaintiffs") bring this action individually and on behalf all Class Members, *i.e.*, persons in the United States who purchased or leased any 2004-2010 model year BMW E64 (6 Series Convertible) vehicles (collectively, "Class Vehicles") imported, distributed, warranted, serviced, repaired and sold by BMW of North America, LLC ("BMW NA") and designed and manufactured by BMW Aktiengesellschaft ("BMW AG") (collectively, "Defendants" or "BMW").

2.　　Since 2004, if not before, BMW knew or should have known that the Class Vehicles and their convertible tops contain one or more design and/or manufacturing defects that prevent their convertible tops from completely opening and closing; cause their

convertible tops to become jammed into a fixed position; and cause the convertible top operation light to flash, the "top not locked" warning message to appear, and/or an alarm to sound (the "Convertible Top Defect" or "defect").  When this occurs, consumers cannot open the trunk lid and/or are unable to roll the windows up or down.

3.      The Convertible Top Defect, which can cost up to $5,000 to repair or replace, is not simply an economic or aesthetic concern: it is also a serious safety hazard.  BMW's 2005 6-Series Owner's Manual ("2005 Owner's Manual") explicitly identifies the Convertible Top Defect as a dangerous condition: "Driving without having completed the opening or closing action [of the convertible top] can lead to damage or injury."  BMW's 2006 6-Series Owner's Manual ("2006 Owner's Manual") acknowledges that a "convertible top which is not completely opened or closed presents a danger."

4.      Indeed, Plaintiffs allege that the convertible top contributes to a vehicle's aerodynamic design.  When the convertible top does not completely open or close, the aerodynamics of the Class Vehicles are disrupted.  An incompletely opened or closed top increases the drag coefficient of the Class Vehicles and causes turbulence, which, in turn, can cause a Class Vehicle to lose traction and to behave unpredictably while in motion.  Therefore, the Convertible Top Defect is unreasonably dangerous because it can diminish the stability of the vehicle and the driver's ability to control it while the vehicle is in operation, and under any driving conditions or speeds, thereby exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury.

5.      Since 2004, if not before, BMW knew or should have known that the Class Vehicles suffer from the Convertible Top Defect.  Nevertheless, BMW has actively concealed this safety defect and failed to disclose it to Plaintiffs and Class Members at the

time of purchase or lease and thereafter.  Had Plaintiffs and the other Class Members at the time of purchase or lease known about the Convertible Top Defect contained in the Class Vehicles and/or the monetary costs associated with repairing the defect, they would not have bought or leased the Class Vehicles or would have paid less for them.

6.     Plaintiffs are also informed and believe and based thereon allege that as the number of complaints increased, and Class Members grew dissatisfied with the Class Vehicles' convertible tops, BMW acknowledged and admitted that the Class Vehicles and their convertible tops suffer from an inherent defect.

7.     In November 2006, BMW issued a Technical Service Bulletin ("TSB") to only its dealers.  The TSB provided BMW's dealers with the following information:

> SITUATION
>
> The customer may complain that either the convertible top will not completely open or close, or the convertible top appears to be completely open/closed, yet the red top operation light continues to flash and the top not locked message appears.  [ ¶]  Fault code A6A4, for overspeed, will typically be stored in the CVM (Convertible Top Module) when this situation occurs.

8.     In the 2006 TSB, BMW acknowledges that the Class Vehicles and their convertible tops are defective and identifies potential solutions to repair the Convertible Top Defect:

> CAUSE
>
> The angle of rotation sensor on the tensioning bar is reading the wrong segment.  [¶]  The sensor position segments are very close together; therefore, if the frame or the sensor itself is slightly out of position, the wrong segment may be read.  [¶]  This condition is exaggerated by temperature-induced expansion, such as when the vehicle sits in direct sun for an extended period of time.

9.     The 2006 TSB also suggests two "corrections" for the defect, one applicable to Class Vehicles produced up to August 2005, and one applicable to vehicles produced after

August 2005.  The former involves wholesale replacement of the "angle of rotation sensor" with an updated part.  The latter involves removal and modification of the existing sensor which already have the updated parts installed for vehicles produced after August 2005.

10.     Plaintiffs are informed and believe and based thereon allege that BMW is aware that these "corrections" are only temporary fixes that were implemented to last only long enough to ensure that the manifestation of the Convertible Top Defect occurs outside of the Class Vehicle's express warranty period, enabling BMW to shift financial responsibility for the defect to Class Members.  Ultimately, this leaves consumers with defective vehicles that are substantially certain to again experience the defect, costly repairs, as well as the attendant safety hazards.

11.     In June 2011, BMW issued another TSB for the subject vehicles to only its dealers, providing them with the following information:

> SITUATION
>
> The customer may complain that either the convertible top will not completely open or close, or the convertible top appears to be completely open/closed, yet the red top operation light continues to flash and the top not locked message appears.  [ ¶]  Fault code A6A4, for overspeed, will typically be stored in the CVM (Convertible Top Module) when this situation occurs.

12.     In the 2011 TSB BMW again acknowledges that the Class Vehicles and their convertible tops are defective:

> CAUSE
>
> **The angle of rotation sensor (Control Element) on the tensioning bar is <u>defective</u> or reading the wrong segment.**  [¶]  The sensor position segments are very close together, and if the frame or the sensor itself is slightly out of position, the wrong segment may be read.  [¶]  This condition is exaggerated by temperature-induced expansion when the vehicle sits in direct sun light for an extended period of time.

(emphasis added.)

13.     The June 2011 TSB describes procedures that are different from the ones described in the 2006 TSB, thereby confirming that diagnostic procedures and repairs outlined in the 2006 TSB were temporary ones that did not fix the problem:

> This Service Information bulletin **supersedes** SI B54 17 06 dated November 2006.
>
> **[NEW] designates changes to this revision**
>
> SUBJECT
> Convertible Top Does Not Completely Open or Close
>
> MODEL
> E64 (6 Series Convertible)

(emphasis added.)

14.     However, Plaintiff is informed and believes and thereon alleges that these new procedures and repairs are also temporary fixes that were implemented to last only long enough to ensure that the manifestation of the Convertible Top Defect occurs outside of the Class Vehicle's express warranty period, enabling BMW to shift financial responsibility for the defect to Class Members.  Ultimately, this leaves consumers with defective vehicles that are substantially certain to again experience the defect, costly repairs, as well as the attendant safety hazards.

15.     Prior to purchasing the Class Vehicles, Plaintiffs and other Class Members did not know that the Class Vehicles suffered from the Convertible Top Defect and did not contemplate that the Class Vehicles' convertible tops would be unable to properly open and close, thereby requiring costly repairs that can cost hundreds to thousands of dollars.

16.     Plaintiffs are informed and believe and based thereon allege that since 2004, if not before, BMW knew or should have known that the Class Vehicles are defective and suffer from the Convertible Top Defect and are not fit for their intended purpose of providing

consumers with safe and reliable transportation.  Nevertheless, BMW has actively concealed this defect from, and failed to disclose it to, Plaintiffs and the other Class Members at the time of purchase or lease and thereafter.

17.     BMW knew and concealed the Convertible Top Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated costs, from Plaintiffs and the other Class Members at the time of sale and thereafter.  Had Plaintiffs and the other Class Members known about this defect at the time of sale or lease, as well as the associated costs related to this defect, they would not have purchased the Class Vehicles or would have paid less for them.

18.     Despite notice of the defect from numerous consumer complaints, dealership repair orders, as well as various other sources, BMW has not recalled the Class Vehicles to repair the Convertible Top Defect, has not offered all of its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicles' owners and leaseholders who incurred costs relating to repair or replacement of the convertible tops.

19.     As a result of their reliance on BMW's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles, including resale value.

## PARTIES

### Plaintiff Robert Gray

20.     Plaintiff Robert Gray is a California citizen who resides in Irvine, California.

21.     In or about January 2010, Mr. Gray purchased a used 2005 BMW 645Ci convertible with approximately 28,600 miles on the odometer from Phillips Auto in Newport Beach, California.  Mr. Gray purchased the vehicle primarily for his personal, family, or

household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by BMW, and bears Vehicle Identification Number WBAEK73425B324440.

22.     Several months after purchasing the subject 2005 BMW 645Ci vehicle, Mr. Gray noticed that the convertible top intermittently did not completely open or close, and that even when the top appeared to be completely opened or closed, the top operation light would nevertheless flash and the "top not locked" message would appear.  Further, when the top operation light flashed, he could not open the trunk.

23.     As a result of these problems, on or about June 2010, Mr. Gray brought his 645Ci to Irvine BMW, who advised him that the entire convertible top needed to be replaced, at a cost of approximately $5,000.  The dealer further advised him that the repairs were not covered under warranty.

24.     Rather than pay the $5,000 out-of-pocket, on or about June 11, 2010, Mr. Gray brought his 645Ci to AAA Convertible & Sunroof Services ("AAA Convertible") in Costa Mesa, California, who replaced the existing "hydraulic pump" in his vehicle with a used part, at a total cost of $1,087.50.

25.     The repairs performed by AAA Convertible did not fix Mr. Gray's convertible problems because they immediately recurred after they were performed.  As a result, Mr. Gray immediately brought his 645Ci back to AAA Convertible, who performed unspecified repairs on the subject vehicle at no cost to Mr. Gray that resolved the problems Mr. Gray was experiencing.  Mr. Gray sold the subject 645Ci BMW to Phillips Auto approximately one year after the final repair by AAA Convertible was performed.

26.     In or about October of 2011, Mr. Gray purchased a used 2006 BMW 650i convertible, with approximately 46,000 miles on its odometer, from Phillips Auto in Newport

Beach, California.   Mr. Gray purchased the vehicle primarily for his personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by BMW, and bears Vehicle Identification Number WBAEK13416CN75488.

27.     Several months after purchasing the subject vehicle, Mr. Gray intermittently began to experience the same problems with the convertible top on his 650i as he had with his 645Ci, namely, incomplete opening and closing of the convertible top, flashing of the top operation light, and appearance of the "top not locked" warning message even when the top appeared to be completely open or closed.

28.     In or about January or February 2012, Mr. Gray took the subject 650i BMW to AAA Convertible and was advised that it would cost him approximately $3,000 to fix the convertible defect alleged herein if used parts were not used.  Further, AAA Convertible advised Mr. Gray that the convertible defect alleged herein was a "common problem" with these types of BMW convertible vehicles because AAA convertible had performed similar repairs on these types of vehicles in the past.

29.     Due to the high repair costs and the fact that the repair may not even fix the problem, Mr. Gray has not yet repaired the defect on the subject 650i BMW and as a result continues to intermittently experience the convertible defect alleged herein.

30.     Before he purchased the subject vehicles, including the first BMW Convertible vehicle, Mr. Gray consulted with BMW sales representatives at two separate BMW authorized dealerships, who confirmed Mr. Gray's expectations that the Class Vehicles (E64 6 Series Convertibles) provided the driver with the ultimate driving experience and even allowed Mr. Gray to test drive them. However, at no time did these BMW dealers or any of the postings on the subject vehicles that Mr. Gray test drove disclose

to Mr. Gray that the subject vehicles suffer from the convertible defect alleged herein.  Had BMW disclosed the true nature of the Convertible Defect alleged herein, Mr. Gray would not have purchased either of the subject vehicles or would have paid less for them.

**Plaintiff Markum George**

31.    Plaintiff Markum George is a California citizen who resides in Corona, California.

32.    In or about May 28, 2009, Mr. George purchased a used 2005 BMW 645Ci convertible with approximately 50,403 miles on the odometer from Hooman Toyota of Long Beach in Long Beach, California.  Mr. George purchased the vehicle primarily for his personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by BMW, and bears Vehicle Identification Number WBAEK73455B324822.

33.    Before he purchased the subject vehicle, Mr. George consulted BMW's sales and promotional materials concerning E-64 6 Series Convertible Vehicles, including BMW's website and brochures, as well as general BMW marketing materials, including television commercials that had informed him that BMW vehicles were the ultimate driving machine. Moreover, prior to purchasing the subject vehicle, Mr. George visited a BMW dealer and spoke with a BMW dealer sales representative, who further confirmed Mr. George's expectations that the Class Vehicles (E64 6 Series Convertibles) provided the driver with the ultimate driving experience and even allowed Mr. George to test drive one of the Class Vehicles.  However, none of the materials that Mr. George consulted or viewed nor the individual with whom he spoke with prior to purchasing the subject vehicle, ever disclosed to Mr. George that the Class Vehicles suffer from the convertible defect alleged herein.

34.     Shortly after purchasing the subject 2005 BMW 645Ci vehicle, Mr. George noticed the "top not locked" message appear, including while he was driving, which prevented Mr. George from completely opening and closing the convertible top of his vehicle. As a result, in addition to performing other repair on the subject vehicle, on or about July 1, 2009, with approximately 52,752 miles on the odometer, Mr. George brought his 645Ci to BMW of Riverside.  The dealer confirmed Mr. George's complaints, finding that the "CK OPERATION OF CONV TOP" was "INOP[erable]."  The dealer then performed a series of tests and repairs (including resetting the convertible top and clearing codes).  Mr. George paid approximately $280 out-of-pocket for these repairs.

35.     The repairs conducted by BMW of Riverside did not fix the convertible top defect alleged herein, because they recurred in or about January 2010.  On or about January 27, 2010, with approximately 59,725 miles on the odometer, Mr. George brought his vehicle to BMW of Riverside complaining that "while driving the convertible top malfunction light comes on and says top not locked."  The dealer was unable to duplicate Mr. George's complaint after a 25 miles test drive and requested that Mr. George "return when [his] complaint becomes more consistent for [dealer] to diagnose."

36.     Shortly after the January 27, 2010 repair visit, the "top not locked" problem again recurred, including while Mr. George was driving.  On or about February 11, 2010, with 60,100 miles on the odometer, Mr. George brought his vehicle to BMW of Riverside complaining that "convertible top shows not locked and malfunction light is on." The dealer confirmed Mr. George's complaints and readjusted the convertible sensor.

37.     These further repairs did not fix the problem.  On or about January 21, 2013, with approximately 98,442 miles on the odometer, Mr. George brought his vehicle to BMW

of Riverside again complaining that the convertible top will not lock in place. The dealer verified Mr. George's concerns and replaced the convertible sensor.  Mr. George paid approximately $559 out-of-pocket for these repairs.

38.    However, these further repairs did not fix the convertible defect problems alleged herein. On or about February 18, 2013, with approximately 99,074 miles on the odometer, Mr. George took the vehicle to BMW of Riverside complaining that the convertible top is "stuck closed" which also prevented Mr. George from closing the rear window of the subject vehicle, thereby exposing the interior of the vehicle to rain and other environmental dangers.  The dealer verified Mr. George's convertible defect complaints and this time replaced the convertible top's hydraulic unit.  Mr. George paid approximately $2,478 out-of-pocket for these repairs.

39.    Additionally, during one of Mr. George's repair visits to a BMW dealer after which he complained about his repeated encounters with the Convertible Top Defect concerns alleged herein, the BMW dealer admitted to Mr. George that the Convertible Top Defect problems that he *w*as experiencing was a common problem amongst all the E-64 six series BMW convertible vehicles.   However, despite this admission and BMW's knowledge of the Convertible Defect at the time of sale and thereafter as alleged herein, when Mr. George contact BMW N.A. to seek reimbursement for his Convertible Top Defect problems alleged herein, BMW N.A simply refused to provide Mr. George with any remedy.

40.    At all times, Mr. George, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**The Defendants**

41.   BMW NA is a corporation organized and in existence under the laws of the State of New Jersey with its headquarters located in Woodcliff Lake, New Jersey.  At all times relevant herein, BMW NA was engaged in the business of importing, marketing, distributing, warranting, servicing, repairing and selling automobiles and other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America.  Indeed, Plaintiff is informed believed and thereon alleges that BMW N.A.'s wrongful conduct alleged herein, including its decision not to disclose the alleged defect to prospective class members, took place and emanated from New Jersey.

42.   BMW AG is a foreign corporation organized and in existence under the laws of the Federal Republic of Germany with its principal place of business at Petuerling 130, 80809 Munich, Germany.  BMW AG designs, manufactures, exports, and warrants motor vehicles, parts, and other products for sale in the United States and for export and sale throughout the world.

43.   Plaintiffs are informed and believe, and based thereon, allege that BMW NA communicates with BMW AG concerning virtually all aspects of the Class Vehicles sold in the United States. BMW NA regularly and routinely provided feedback to BMW AG regarding the distribution, sale, lease, servicing, and warranting of the Class Vehicles, including the Convertible Defect alleged herein.

44.   Whenever, in this Complaint, reference is made to any act, deed or conduct of BMW, the allegation means that BMW engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of  BMW.

**JURISDICTION AND VENUE**

45.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

46.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because BMW has its North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, BMW has advertised in this district and has received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

47.     This Court has personal jurisdiction over BMW.  BMW's North American corporate headquarters is located in Woodcliff, New Jersey.  As such, BMW has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

**NEW JERSEY LAW SHOULD APPLY**

48.     To the extent that the Court determines that it is appropriate to engage in a choice of law analysis for purposes of deciding any motion to dismiss that may be filed by

BMW, New Jersey's substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.

49.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

50.     Specifically, BMW's North American headquarters and principal place of business is located in New Jersey.  BMW is also registered with the New Jersey State Business Gateway Service.

51.     BMW owns property and conduct substantial business in New Jersey and, therefore, New Jersey has an interest in regulating BMW's conduct under its laws.  BMW's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

52.     A substantial number of Class Members also reside in New Jersey and purchased their vehicles in New Jersey.

53.     Upon information and belief, New Jersey is also the forum from which BMW's misconduct emanated.  This conduct similarly injured and affected Plaintiffs and all Class Members residing in the United States.  For instance, BMW's marketing and advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from the location

of BMW's present headquarters in New Jersey.  As a result, New Jersey is where the conduct causing injury to the Plaintiffs and Class Members occurred and from where it emanated.

54.     The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## TOLLING OF STATUTES OF LIMITATION

55.     Any applicable statute(s) of limitations has been tolled by BMW's knowing and active concealment and denial of the facts alleged herein. Despite their due diligence, Plaintiffs and members of the class could not have reasonably discovered the true, defective nature of the Class Vehicles and their convertible top until shortly before this class action litigation was commenced.

56.     BMW was and remains under a continuing duty to disclose to Plaintiffs and members of the class the true character, quality and nature of the Class Vehicles and their convertible top, that this defect is based on defects in materials and/or manufacturing, that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles. As a result of the active concealment by BMW, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

57.     Moreover, because the defects in the convertible tops cannot be detected until the defect manifests itself, Plaintiffs and the Class were not reasonably able to discover the problem until long after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

58.     Plaintiffs and the other Class Members had no realistic ability to discern that the convertible tops were defective until the defect manifested itself.  In addition, despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their convertible tops were concealed from them, until the Convertible Top Defect had manifested itself.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the other Class Members.

59.     Any applicable statute of limitation has therefore been tolled by BMW's knowing, active concealment and denial of the facts alleged herein.  BMW is further estopped from relying on any statutes of limitation because of its concealment of the defective nature of the Class Vehicles and their convertible tops.

## FACTUAL ALLEGATIONS

60.     For years, BMW has imported, distributed, marketed, advertised, warranted, serviced, repaired, sold and leased the Class Vehicles.  Upon information and belief, it has sold directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles nationwide.

61.     The Class Vehicles contain one or more defects that prevent their convertible tops from completely opening and closing; cause their convertible tops to become jammed into a fixed position; and cause the convertible top operation light to flash, the "top not locked" warning message to appear, and/or an alarm to sound. When this occurs, consumers cannot open the trunk lid and/or are unable to roll the windows up or down.

62.     Plaintiffs are informed and believe and based thereon allege that BMW acquired its knowledge of the Convertible Top Defect through sources not available to Class

Members, including but not limited to pre-release testing data, early consumer complaints about the defect to BMW directly and its dealers, testing and investigations conducted in response to these complaints, replacement parts sales data, aggregate data about the Convertible Top Defect from BMW's dealers, including high number of warranty reimbursement claims (contained in BMW's warranty databases), and from other internal sources that are only accessible to BMW.

63.    Notwithstanding its knowledge of the Convertible Top Defect, BMW represents that the Class Vehicles are "perfectly" designed and constructed: "As soon as you take the wheel for the first time, you will sense how perfectly the BMW 6 Series Convertible has been constructed for you.  Every surface and every line, every switch and every display. All the essentials are designed perfectly with the driver in mind and positioned exactly where you intuitively expect them to be."1

64.    BMW has a duty to disclose the Convertible Top Defect and the associated out-of-pocket repair costs to Class Vehicle owners and lessees, among other reasons, because the defect poses an unreasonable safety hazard; because BMW had and has exclusive knowledge or access to material facts about the Class Vehicles and convertible tops that were and are not known or reasonably discoverable by Plaintiffs and Class Members; and because BMW has actively concealed the defect from its customers.

65.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced Convertible Top Defect.  Complaints posted by consumers on the Internet demonstrate that the defect is widespread.  The complaints also indicate BMW's awareness

---

1 *See* http://www.bmw.com/com/en/newvehicles/6series/convertible/2010/showroom/ comfort/driver_orientation.html#more.

of the defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

- I have a 2004 645ci, and for some reason the top wont go down.. When i hit the button the green light comes on, and the windows drop...but the roof wont move. Its strange? Any reset? anyone have advise?

- Like many frustrated owners but still loyal lovers of their pre-2012 650i convertible, I am at my wits end on my faulty top sensor leaving me stranded with window half down, top fully down, and 12 plus wasted days at an equally frustrated dealership. I have concluded my ONLY solution to fix this problem once and for all is to move up to a 2012. BUt, before I drop 100k plus on the new beauty.....

  HAS ANYONE HAD ANY ISSUES WITH THEIR NEW TOP????

  Thanks!

- Well after 5 replacement sensors and numerous bracket adjustments, I started my car yesterday and got the dreaded " Convertible Top Unlocked Error" again. So I brought my car to my service adviser and he said he would call me after they cooled it down, then heated it up, then cooled it down to see how much they needed to adjust the sensor. This is the same procedure BMW recommended the last 5 times so needless to say I wasn't that enthusiastic about the outcome. To my surprise I get a call from my adviser and he informed me that a BMW field engineer was at his dealership and recommended that the entire roof frame be replaced! Not only on my car but also on a M6 that was in for the same issue. He said this has been done to other cars and it solves the problem. I'll have to wait until I get it back, but if it does fix it I think everyone with this problem should request their service adviser to look into this fix. The weather here has been over 90 degrees all summer and we have had a number of 100+ days. So if you live in this type of climate, the sensor adjust may not work because of our huge swing in temperature form winter when its 30 degrees for a low, to this extreme heat we are experiencing now. I hope this helps someone because its a great car, but this issue is very disheartening!

- Please do post if it is working for you. I took mine in for try #5 two weeks ago and got the warning AGAIN this week.

- Hello, After posting that my 2005 645 is experiencing the dreaded intermittent roof alarm, I was contacted by BMWNA. After explaining the trouble and that the warranty was up this past March, they told me "sorry we can not help you"! Take the car to our dealers for a service

repair. I went on to voice my concern that based on the forum complaints and BMW's inability to fix the alarms that I feel they should look into fixing my issue under a customer concession. They replied that it was just chatter on the forums and there is no recall. They again told me sorry you'll have to take it to the dealership.

So what was the point in contact me? I really thought wow they are going to stand behind their product knowing that these roof alarms are a real concern to the consumers.

- Update: Brought mine in for the 7th time and was told that this time "they've got it". All was good the first three times the top went up, but today sadly, it happened again. Bringing it in for the 8th time in over a year. I love this car and have alot of patience, but this is plain silly for sensor issue. Turn the blasted thing off or something.

- I know what you are going through. you look at the button, you feel as if your playing a slot machine, "will it go down this time?" so you push it and hope the windows go down. It's like that old game show Jokers Wild "come on! big money no whammy! LOL" I can't express my distrust of this system in words. I thought the car I replaced with this 6 series, a Lexus SC430 had an weird top mechanism, but it never failed. If you can have features like night vision or radar cruise on BMW cars, then someone in R & D should be able to find a fix that works!

- I've already had BMW's regional service guy involved. He showed the foreman working on my car a new procedure to adjust the sensor "even more" than with the "old" procedure. And yet I still have the problem.

- I am having problems with my convertible top on my 645. It will not go up or down. The red light flshes on and off. On my dash, it states that the top is not closed, but it is closed.

  Damsel in distress. Please help.

-  I run an engineering firm, and one of the things I always stess is "An engineer is not qualified on his technology, until he knows how NOT to use                              his                              technology."

  In the case of the convertible top lock alarm on the 07 650i, this is a case of runaway technology application - just because. Application without a rational and ethical review of its contingencies/downsides. That is NOT engineering.

  I am constantly having the car alarm tell me that the car roof is unlocked and binging at me as I drive down the road with the top perfectly in

place. But, what it also does is assumes I must be some idiot, and locks out the windows so I drive around in the rain with them all down, or locks the top in the open position so I am driving around in the rain with it down, locks up the trunk so I cannot get into it and here's the best part......

It keeps the alarm condition for a solid half hour!!!!!!!! Whooopeeee!!!!!!!!!!!!! That way I can enjoy being parked under bridge overhangs in rainstorms for a half hour while the false alarm resets.....

The tire pressure alarm constantly goes off, even though my tires are all to spec, the "Headlamp" "Licenseplate" Lamp alarm lights are always going                                                                              off.....

I took it into the dealership and they could find nothing wrong, and the problem is intermittent (like only happens in the rain or when I am at the airport        50        miles        from        home,        etc).

What the heck do I do? Has anyone else had this problem?

- I am having the same problem!! I live in Florida too.. When that light LED is flashing, the trunk wont open, I try to hit the open button for the trunk and it would not open.. I hit the top down button, it pushes the windows half way down, but top wont open. The service people have had it for almost 2 weeks now, and because I didnt buy it from them, I get NOTHING! BMW is going to have to pay my monthly payment soon,        plus        rental        car        reimbursement..

  Keep a camera in the car.. Use your cell phone like I had too, because they didnt believe me, by the time I took it to a dealer it would resolve itself. It acted up one day, recently.. Took my Iphone and snapped numerous pictures.. Needless to say, they still have my 645 Convertible, I        have        a        call        into        BMW        north        America.

  Did they ever resolve it for you?

- Sorry if im doing this the wrong way, this is my first post. I bought a '07 M6 in Dec '10 with 26K. Had to get the vert top motor replaced by dealer (at my cost-1K$) due to the top saying unlocked when it was closed. This was done in feb '11, 2 days ago driving in the rain the top did the same thing after the top was already up, left in my garage overnight the top corrected itself and went back to normal, today i got caught in a rain storm and the top again said it was unlocked when it was up. I have a few questions, 1) what do i need tell the dealer, I am going to try to get them to fix it for free since I just dropped 1k in feb, 2) Does

the smart top module stop this glitch?, 3) How can i get the windows up when this happens (stuck half closed)? Thanks for your help

- i have a 6 series soft top. Problem i have is that windows not closing and there is a red light on the soft top button and computer is saying that the soft top is not locked when it is. Please help me!
- Q
  car year: 2005
  car model: 645Ci Convertible
  Hello, I'm having a problem with a system warning…."convertible top not locked!". This, strangely enough, occurs when the top hasn't been retracted in at least a week…totally random and I'm stuck with it until it decides to go away.

66.     Customers have reported the Convertible Top Defect in the Class Vehicles to BMW directly and through its dealers.  Since 2004, if not before, BMW was fully aware of the defect.  Despite this, BMW has failed to disclose and actively concealed the existence and nature of the defect from Plaintiffs and the other Class Members at the time of purchase and thereafter.  Specifically, BMW has:

    a.      failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including their defective convertible tops;

    b.      failed to disclose at the time of purchase or lease that the Class Vehicles, including their convertible tops, were not in good in working order, were defective, and were not fit for their intended purposes; and

    c.      failed to disclose or actively concealed the fact that the Class Vehicles and their convertible tops were defective, despite the fact that BMW learned of such defects through consumer complaints, as well as through other internal sources, as early as 2004, if not before.

67.     BMW has caused Plaintiffs and Class Members to expend money at its dealerships or other third-party repair facilities to repair or replace the convertible top and its components, despite BMW's knowledge of the defect.

68.     BMW has not recalled the Class Vehicles to repair the defective convertible tops, and has not offered to reimburse Class Vehicle owners and leaseholders who incurred costs relating to the defect.

69.     Plaintiffs and the other Class Members are reasonable consumers who do not expect their convertible tops to fail to open or close properly or have their trunk lids fail to open and/or their windows to fail to open or close.

70.     Plaintiffs and the other Class Members expect and assume that BMW will not sell or lease vehicles with known defects, such as the Convertible Top Defect, and will disclose any such defects to its consumers before they purchase the Class Vehicles.  They do not expect BMW to fail to disclose the Convertible Top Defect to them, or to actively conceal the existence of the defect.

71.     Consequently, Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

72.     As a result of the Convertible Top Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

74.     The Class and Sub-Classes are defined as:

Nationwide Class:     All current and former owners and lessees of any 2004-2010 model year BMW E64 (6-Series Convertible) vehicles.

California Sub-Class: All Members of the Nationwide Class who purchased or

leased the subject vehicles in the state of California.

75.     Excluded from the Class and Sub-Classes are: (1) BMW, any entity or division in which BMW has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

76.     Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Members of the Class are readily identifiable from information and records in BMW's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

77.     Typicality:     The claims of each of the representative Plaintiffs are typical of the claims of the Class in that each of the representative Plaintiffs, like all Class Members, purchased and leased a Class Vehicle designed, manufactured, and distributed by BMW in which the convertible top is defective.  Each of the representative Plaintiffs, like all Class Members, has been damaged by BMW's misconduct in that each of the Plaintiffs has incurred or will incur the cost of replacing the convertible top and/or repairing the damage caused from the Class Vehicles and their defective convertible top.  Furthermore, the factual bases of BMW's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

78.     Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class which predominate over any questions affecting only individual Class Members.  These common legal and factual issues include the following:

a.     Whether the Class Vehicles and their convertible tops are defectively designed or manufactured;

b.     whether the fact that the Class Vehicle suffer from the Convertible Top Defect would be considered material by a reasonable consumer;

c.     whether as a result of BMW's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing the Class Vehicles;

d.     whether BMW was aware of the Convertible Top Defect;

e.     whether the Convertible Top Defect constitutes an unreasonable safety risk;

f.     whether BMW has a duty to disclose the defective nature of the Class Vehicles and their Convertible Top Defect to Plaintiffs and the other Class Members;

g.     whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

h.     whether BMW violated the consumer protection statutes of New Jersey or California when it sold to consumer Class Vehicles that suffered from Convertible Top Defect.

i.     Whether BMW breached the implied warranty of merchantability.

79.     Adequate Representation:  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously

80.     Predominance and Superiority:  Plaintiffs and the other Class Members have all suffered and will continue to suffer harm and damages as a result of BMW's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and

efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for BMW's misconduct.  Absent a class action, Class Members will continue to incur damages, and BMW's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
#### (On Behalf of the Nationwide Class)

81.     Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82.     The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J.S.A. 56:8-2.

83.     Plaintiffs and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

84.     BMW engaged in unlawful conduct, made affirmative misrepresentations and material omissions, or otherwise violated the NJCFA.  Specifically, BMW was aware that the Class Vehicles suffered from a common defect resulting in failure of the convertible tops in

the Class Vehicles, but purposefully failed to disclose this to Plaintiffs and Class Members during the purchase of the vehicle or thereafter.  BMW failed to disclose the Defect with the knowledge that many Class Members may not discover the Defect until after the expiration of their warranties.

85.     BMW also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  BMW purposefully and knowingly failed to disclose the Defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

86.     BMW did not fully and truthfully disclose to its customers the true nature of the inherent defect in the convertible tops, which was not readily discoverable until years later, sometimes after the warranty has expired.  In fact, on the dates Plaintiffs purchased their vehicles, BMW had acknowledged the defect to its dealers years earlier and described how to remedy the defect, and yet Plaintiffs' vehicles were never modified and they were never advised about the defect.

87.     BMW intended that Plaintiffs and all Class Members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles and not have the defects remedied under warranty.

88.     As a result of BMW's conduct, Plaintiffs and Class Members have suffered an ascertainable loss.  In addition to direct monetary losses to repair the Defect, which can be thousands of dollars, Plaintiffs and Class Members have also suffered an ascertainable loss by receiving less than what was promised.

89.     A causal relationship exists between BMW's unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class Members.  Had the Defect in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or would have presented their vehicles for repair of the Defect under warranty.

**COUNT II**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

90.     Plaintiffs and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

91.     BMW made material misrepresentations and omissions concerning a presently existing or past fact.  For example, BMW did not fully and truthfully disclose to their customers the true nature of the Defect in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

92.     These omissions and statements were made by BMW with knowledge of their falsity, and with the intent that Plaintiffs and Class Members rely on them.

93.     Plaintiffs and Class Members reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class)**

94.     Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

95.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

96.     BMW breached the covenant of good faith and fair dealing by, inter alia, failing to notify Plaintiffs and Class Members of the Defect in the Class Vehicles, and failing to fully and properly repair this defect.

97.     BMW acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

98.     Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

99.     As a direct and proximate result of BMW's failure to disclose known defects and material misrepresentations regarding known defects, and the scope of the Warranty coverage in the Class Vehicles, BMW has profited through the sale and lease of said vehicles.

100.    Additionally, as a direct and proximate result of BMW's failure to disclose known defects and material misrepresentations regarding known defects in the Class

Vehicles, Plaintiffs and Class Members have incurred substantial costs to repair the defects, which requires the replacement of the defective parts with "updated" parts also sold by BMW.  As a result of having to purchase these "updated" parts to fix the Defect, Plaintiffs and Class Members have conferred an unjust substantial benefit upon BMW.

101.    Moreover, as a direct and proximate result of BMW's failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, BMW has profited to the extent that Plaintiffs and Class Members purchased and leased BMW's vehicles, purchased certified parts directly from BMW to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

102.    BMW has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to BMW's profits when said money should have remained with Plaintiffs and Class Members.

103.    As a result of the BMW's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## COUNT V
### Violation of California's Consumer Legal Remedies Act,
### California Civil Code sections 1750 *et seq*.
### (On Behalf of the California Sub-Class)

104.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

105.    Plaintiffs bring this cause of action against BMW on behalf of themselves and on behalf of the members of the California Sub-Class.

106.    BMW is a "person" as defined by California Civil Code § 1761(c).

107.    Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

108.    By failing to disclose and concealing the defective nature of the Class Vehicles and their convertible tops from Plaintiffs and prospective Class Members, BMW violated California Civil Code § 1770(a), as they represented that their Class Vehicles and their convertible tops had characteristics and benefits that they do not have, and represented that their Class Vehicles and their convertible tops were of a particular standard, quality, or grade when they were of another.  See Cal. Civ. Code §§ 1770(a)(5) & (7).

109.    BMW's unfair and deceptive acts or practices occurred repeatedly in BMW's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

110.    BMW knew that its Class Vehicles and their convertible tops suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

111.    BMW was under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles and their convertible tops and/or the associated repair costs:

        a.    BMW was in a superior position to know the true state of facts about the safety defects contained the Class Vehicles and their convertible tops;

        b.    Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that their convertible tops have a dangerous safety defect until after they purchased the Class Vehicles; and

        c.    BMW knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn about or discover the safety defect.

112.   In failing to disclose the Convertible Top Defect, BMW has knowingly and intentionally concealed material facts and breached its duty not to do so.

113.   The facts concealed or not disclosed by BMW to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase BMW's Class Vehicles, or to pay less for them.  Had Plaintiffs and the other Class Members known that the Class Vehicles' contained safety defects in the convertible tops, they would not have purchased the Class Vehicles or would have paid less for them.

114.   Plaintiffs and the other Class Members are reasonable consumers who do not expect their convertible tops to fail to open or close properly.  Plaintiffs and the other Class Members further expect and assume that BWM will not sell or lease vehicles with known safety defects, such as the Convertible Top Defect, and will disclose any such defect to its consumers when it learns of the defect.

115.   As a result of BMW's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual damages.

116.   As a direct and proximate result of BMW's unfair or deceptive acts or practices, Plaintiffs and the other Class Members have suffered and will continue to suffer actual damages.

117.   Plaintiffs and the Class are entitled to equitable relief.

118.   Plaintiffs provided BMW N.A. and BMW AG with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  However, both entities failed to provide appropriate relief for their violations of the CLRA.  Accordingly, Plaintiffs

are now amending this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief they sought before.

## COUNT VI
### Violation of California Business & Professions Code § 17200, *et seq.*
### (On Behalf of the California Sub-Class)

119.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

120.   Plaintiffs bring this cause of action against BMW on behalf of themselves and on behalf of the California Sub-Class.

121.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

122.   BMW knew that the Class Vehicles and their convertible tops suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

123.   In failing to disclose the Convertible Top Defect, BMW has knowingly and intentionally concealed material facts and breached its duty not to do so.

124.   BMW was under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles and their defective convertible tops because:

      a.   BMW was in a superior position to know the true state of facts about the safety defect in the Class Vehicles and their convertible tops;

      b.   BMW made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their convertible tops; and

      c.   BMW actively concealed the defective nature of the Class Vehicles and their convertible tops from Plaintiffs and the other Class Members.

125.     The facts concealed or not disclosed by BMW to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase BMW's Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Class Vehicles suffered from the Convertible Top Defect, they would not have purchased the Class Vehicles or would have paid less for them.

126.     BMW continued to conceal the defective nature of the Class Vehicles and their Convertible Top Defect even after Class Members began to report problems.

127.     By its conduct, BMW has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

128.     BMW's unfair or deceptive acts or practices occurred repeatedly in BMW's trade or business, and were capable of deceiving a substantial portion of the purchasing public.  Indeed, BMW has an affirmative duty under UCL to disclose material safety fact to consumers and failed to do so in connection with the Class Vehicles.

129.     As a direct and proximate result of BMW's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

130.     BMW has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## <u>COUNT VII</u>
**Breach of Implied Warranty pursuant to Song-Berly Consumer Warranty Act, California Civil Code section 1792 and 1791 *et seq.*
(On Behalf of the California Sub-Class)**

131.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

132.    Plaintiffs bring this cause of action against BMW on behalf of themselves and on behalf of the members of the California Sub-Class.

133.    BMW was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  BMW knew or had reason to know of the specific use for which the Class Vehicles were purchased.

134.    BMW provided Plaintiffs and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  The Class Vehicles, however, are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffer from a convertible top defect that can put the lives of its occupants and other drivers who share the road with them at risk.

135.    BMW impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things, (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by BMW were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

136.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.

137.    BMW's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code sections 1792 and 1791.1 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

a.  An order certifying the proposed Class and Sub-Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

b.  A declaration that BMW is financially responsible for notifying all Class Members about the defective nature of the convertible tops;

c.  An order enjoining BMW from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiffs and Class Members' convertible tops with a suitable alternative product;

d.  Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

e.  An award to Plaintiffs and the Class for compensatory, exemplary, statutory damages, treble and punitive damages, including interest, in an amount to be proven at trial;

f.  Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

g.  A declaration that BMW must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

h.  An award of attorneys' fees and costs, as allowed by law;

i.  An award of pre-judgment and post-judgment interest, as provided by law;

j.  Leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

k.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated:  October 4, 2013

By:   _____
Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated:  October 4, 2013