# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT GRAY and MARKUM GEORGE,** individually and on behalf of a class similarly situated individuals, | Docket No.: 13-cv-3417-WJM-MF |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC and BMW AKTIENGESELLSCHAFT,** | |
| **Defendants.** | |

## WILLIAM J. MARTINI, U.S.D.J.:

This is a putative class action based on allegations of consumer fraud. Plaintiffs Robert Gray and Markum George filed the Complaint individually and on behalf of a putative class of people who purchased or leased any 2004-2010 model year BMW E64 (6 Series Convertible).  Plaintiffs principally allege that Defendants fraudulently failed to disclose that these cars had a known defect that interferes with the proper opening and closing of their convertible tops.   (Complaint at ¶ 2) Defendant BMW of North America ("BMW NA") filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to strike the class allegations.[1]  Plaintiffs opposed.  There was no oral argument.  L. Civ. R. 78.1(b).  For the reasons set forth below the motion is **GRANTED IN PART**.

---

[1] Co-Defendant BMW Aktiengesellschaft ("BMW AG") is a German entity residing in Munich, Germany.  BMW North America refused to accept service on BMW AG's behalf.  (ECF No. 19)  On March 31, 2014, Plaintiffs requested an order to permit APS International Ltd. to serve BMW AG in accordance with the Hague Convention. (ECF No. 19)  On April 17, 2014, the court granted the request.  (ECF No. 20)

## I.     BACKGROUND

Defendant BMW NA is a corporation organized and in existence under the laws of the State of New Jersey with its headquarters located in Woodcliff Lake, New Jersey.  (Complaint at ¶ 41)  BMW NA is engaged in the business of importing, marketing, distributing, warranting, servicing, repairing, and selling automobiles throughout the United States.   (Complaint at ¶ 41)   Co-Defendant BMW Aktiengesellschaft ("BMW AG") is a German entity residing in Munich, Germany that manufactures, exports, and warrants motor vehicles.   (Complaint at ¶ 41) Plaintiffs allege that Defendants jointly decided in New Jersey not to inform customers or the public about the 6 Series Convertible's defective convertible top. (Complaint at ¶ ¶ 41, 43-44)

Both Plaintiffs are California residents who purchased used BMWs from second-hand dealers in California.  (Complaint at ¶ ¶ 20-21, 31-32)  The Complaint specifically addresses three vehicles, one that George purchased, and two that Gray purchased.  George bought a used 2005 BMW 645Ci with approximately 50,403 miles on the odometer from Hooman Toyota in Long Beach, California on May 28, 2009.  (Complaint at ¶ 32)  Gray bought his first vehicle, a used 2005 BMW 645Ci convertible with approximately 28,600 miles on the odometer from Phillips Auto in Newport Beach, California in January 2010.  (Complaint at ¶ 21)  After experiencing problems with the convertible roof, Gray sold his vehicle back to Phillips Auto, and in October 2011 bought a used 2006 BMW 650i convertible with 46,000 miles on the odometer from Phillips Auto.

All three vehicles originally came with a 4-year/50,000-mile express warranty.  (*See* Opposition Brief at 30)  Plaintiffs concede that the express warranties on their vehicles had expired at the time of purchase, but they note that three other warranties had not expired: a 12-year/unlimited-mile rust performance warranty, an 8-year/80,000-mile emission warranty, and a 7-year/70,000-mile California emission warranty.

### A.     George's Experience

Shortly after purchasing his vehicle, George noticed that the "top not locked" message appeared while driving, which prevented him from completely opening or closing the convertible top.  (Complaint at ¶ 34)  George brought the vehicle to BMW of Riverside, which performed a series of tests and repairs at a cost of $280.

(Complaint at ¶ 34)  The same problem reoccurred several months later, in January 2010.  (Complaint at ¶ 35)  The message apparently went away on its own, because the Complaint notes that George brought the vehicle back to BMW of Riverside on January 27, 2010 and that the dealer was "unable to duplicate George's complaint after a 25-mile test drive and requested that George return when [his] complaint becomes more consistent for the [dealer] to diagnose." (Complaint at ¶ 35)  On February 11, 2010, the "top not locked" light came on again.  (Complaint at ¶ 36) The dealer readjusted the convertible sensor.  (Complaint at ¶ 36)  About three years later, on January 21, 2013, George brought the vehicle to BMW of Riverside again and paid $559 for a replacement convertible sensor.  (Complaint at ¶ 37)  On February 8, 2013, George took his vehicle back to BMW of Riverside because the convertible top became "stuck closed," which prevented George from closing the rear window.  (Complaint at ¶ 38)  The dealer replaced the hydraulic lift at a cost of $2,478.

### B.   Gray's Experience

Several months after Plaintiff Gray purchased his first vehicle, he noticed that the convertible top intermittently would not completely open or close, and that even when the top appeared to be completely opened or closed, the "top not locked" message would appear.  (Complaint at ¶ 22)  Also, when the top not locked light was on, Gray could not open the trunk.  (Complaint at ¶ 22)  Irvine BMW told Gray that he would need to replace the entire convertible top at a cost of $5,000.  (Complaint at ¶ 23)  Instead, Gray had the top replaced with used equipment at AAA Convertible at a cost of $1,087.50.  The repair did not fix the problem.  (Complaint at ¶ 25)  AAA made unspecified repairs at no cost to Gray.  (Complaint at ¶ 25)  Gray then sold the vehicle back to Phillips Auto.  (Complaint at ¶ 25)

In October 2011, Gray bought another vehicle, a 2006 BMW 650i convertible with 46,000 miles on the odometer from Phillips Auto.  (Complaint at ¶ 26)  Several months later, he began experiencing the same problems with the convertible top as he did with the 645Ci, namely, incomplete opening and closing of the convertible top, flashing of the top operation light, and appearance of a "top not locked" light even when the top appeared to be completely opened or closed.  (Complaint at ¶ 27) In February 2012, he brought the car back to AAA Convertible, which advised that repairs would be $3,000 and might not solve the problem. (Complaint at ¶ 28)  Gray chose not to engage in any further repairs and continues to suffer from intermittent problems as a result of the alleged defect.  (Complaint at ¶ 28)

### C.   Plaintiffs' Discovery That They Experienced a "Common Problem"

Gray alleges that AAA Convertible told him that he was experiencing a "common problem" during his visit with his second vehicle.  (Complaint at ¶ 28)  George alleges that the BMW dealer admitted that he was experiencing a "common problem" during one of his repair visits with the dealership.  (Complaint at ¶ 39)

Plaintiffs allege that BMW knew of the defect with the convertible tops of its 6 Series Convertibles via costumer complaints and other internal sources as early as 2004 and yet failed to disclose the defect.  (Complaint at ¶ 5)  Both Plaintiffs claim that they consulted with BMW dealers before making their purchases and that these dealers assured both Plaintiffs that these models would provide the "ultimate driving experience."  (Complaint at ¶ ¶ 30, 33)

Plaintiffs filed a Seven-Count Amended Complaint on October 4, 2013 alleging:

    Count 1: Violation of the New Jersey Consumer Fraud Act
    Count 2: Common Law Fraud
    Count 3: Breach of the Duty of Good Faith and Fair Dealing
    Count 4: Unjust Enrichment
    Count 5: Violation of California's Consumer Legal Remedies Act
    Count 6: Violation of California's Unfair Competition Law
    Count 7: Violation of California's Song-Beverly Act

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## III.   DISCUSSION

### A.   Choice of Law

BMW argues that California law should apply to this case. Plaintiffs argue that New Jersey law should apply, or in the alternative, that it is too soon to decide whether to apply California law or New Jersey law.

This motion presents a choice of law issue that is virtually identical to the one before this court on a motion to dismiss for failure to state a claim in *Feldman v. Mercedes-Benz USA, LLC*, 2:11-CV-00984 WJM, 2012 WL 6596830 (D.N.J. Dec. 18, 2012). This case bears the following similarities with *Feldman*: (1) Plaintiffs residing in California (2) seeking redress against corporate entities residing in New Jersey and Germany (3) for allegedly fraudulent concealment of defective automobile components (4) under New Jersey and California consumer fraud statutes and common law fraud and quasi-contract causes of action. The court finds that California law applies for substantially the same reasons as we held the same in *Feldman*.

A federal court sitting in diversity applies the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, the court will apply the choice of law rules of New Jersey. New Jersey has adopted the "most significant relationship" test of the Restatement of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008). This test requires a two-step analysis. *Id.* at 143. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. *Id.* Second, if a conflict does exist, the court must determine which state has the "most significant

relationship" to the claim, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011).

Although full factual development is often necessary in order to properly weigh the Restatement factors, the Third Circuit frequently determines choice of law questions at the motion to dismiss phase. *Feldman v. Mercedes-Benz USA, LLC*, 2:11-CV-00984 WJM, 2012 WL 6596830 (D.N.J. Dec. 18, 2012) (*citing Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 n. 5 (3d Cir. 2010); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, No. 08-5380, 2010 WL 1424014, at *2 (D.N.J. April 8, 2010)). For the same reasons set forth in *Feldman*, the court finds that it is not premature to perform the choice of law analysis on the motion to dismiss in this case. *Id.* at *5.

Under the first step of New Jersey's choice of law analysis, courts in this District have recognized that the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011); *see also Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461 (D.N.J. 2009) ("*Agostino I*") (finding significant conflicts between the NJCFA and the consumer protection statutes of other states). Courts in this district have also held that an actual conflict exists between the New Jersey and California laws governing contract claims. *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 720 (D.N.J. 2011). Since a conflict of laws does exist, the court must engage the Restatement's most significant relationship analysis.

Three sections of the Restatement apply: one for the statutory and common law fraud claims, one for the unjust enrichment claim, and one for the breach of the duty of good faith and fair dealing claim. For cases involving fraudulent misrepresentation on which the plaintiff relied, Restatement § 148(2) requires a weighing of six factors: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicil, residence, nationality, place of incorporation and place of business of the parties; (e) the place where the tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) of Conflict of Laws § 148(2).

For unjust enrichment claims, the Restatement directs the application of Section 221. The Section 221 factors are: (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship; (b) the place where the benefit or enrichment was received; (c) the place where the act conferring the benefit or enrichment was done; (d) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment. Restatement (Second) of Conflict of Laws § 221.

For causes of action for a breach of the duty of good faith and fair dealing, the court applies Restatement § 188. *Clark v. Prudential Ins. Co. of Am.*, No. 08-6197, 2009 WL 2959801, at *19 (D.N.J. Sept. 15, 2009). Section 188's factors are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188.

Under the second step of the analysis, the factors weigh heavily in favor of California law and only weakly in favor of New Jersey law. The factors weighing in favor of California include: (1) all sales took place in California; (2) Plaintiffs consulted with BMW dealerships in California; (3) Plaintiffs received all communications in California; (4) the damage to the Plaintiffs occurred in California; (5) Plaintiffs made all relevant decisions in California; (6) the vehicles in question were at all times located in California.

The factors weighing in favor of New Jersey include: (1) one of the defendants is domiciled in New Jersey; (2) Plaintiffs allege a scheme to defraud consumers nationwide was planned in New Jersey. These ties to New Jersey do not outweigh the much more significant ties to California. In choosing California law, the court follows a long line of case law on consumer fraud statutes and warranty claims that hold the law of the consumers' home state should govern. *See Feldman*, *supra*, at *7-8 (*citing Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997, at *4 (D.N.J. Oct. 18, 2010); *Agostino I*, 256 F.R.D. at 464-65; *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, No. 08–5380, 2010 WL 1424014, at *1-2 (D.N.J. April 8, 2010); *In re Philips/Magnavox TV Litig.*, No. 09-3072, 2010 WL 3522787, at *9-10 (D.N.J. Sept. 1, 2010); *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 883 (D.N.J. 2010)).

Since California law applies to this case, BMW NA's motion to dismiss is granted with respect to the New Jersey Consumer Fraud Act cause of action.

## B.      California Consumer Legal Remedies Act

"The CLRA proscribes specified 'unfair methods of competition and unfair or deceptive acts or practices in transactions for the sale or lease of goods to consumers.'"  *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 833 (2006) (*quoting* Cal. Civ. Code § 1770(a)).   Among the specifically proscribed practices are "[r]epresenting that goods . . . have characteristics . . . which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," *id.* § 1170(a)(7).

This case is factually analogous with *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), which involved allegations that the defendant was liable under the CLRA for fraudulently concealing defective speedometers, despite the fact that Plaintiffs had purchased cars with expired warranties.   Relying on the *Falk* analysis of California's state law, this court finds that Plaintiffs have stated a cause of action for a violation of the CLRA.

"California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor Co*."   *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).   "California federal courts have generally interpreted the seminal case *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'"   *Wilson*, 668 F.3d at 1141 (*quoting Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)).   Accepting the pleadings as true, the convertible top is a safety issue.

Although BMW's papers deny that the convertible top defect is a safety issue, Plaintiff has plead the existence of evidence in which BMW admits this defect is a safety hazard.   According to the Complaint, BMW's 2005 6-Series Owner's Manual explicitly states, "Driving without having completed the opening or closing action [of the convertible top] can lead to damage or injury." (Complaint at ¶ 3)  BMW's 2006 S-Series Owner's Manual acknowledges that a "convertible top which is not completely opened or closed presents a danger." (Complaint at ¶ 3)

The existence of a safety issue does not mean that a CLRA violation has necessarily occurred but only that the expiration of the warranty does not eliminate the possibility of a CLRA violation.  The existence of a safety issue only permits the court to continue with the CLRA analysis despite the expiration of the warranty.  *See Falk*, 496 F. Supp. 2d at 1094-95.

According to the case *LiMandri v. Judkins*, a failure to disclose or concealment of a defect may be actionable under the CLRA in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (*citing LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997)).  The Plaintiff has stated claims satisfying both the second and third prong.  Since both prongs require the existence of a material fact that is not disclosed to the Plaintiff, we begin the analysis here.

### 1.      Materiality of Defect

In *Falk*, the court found that the plaintiffs had plead a material defect because they had a reasonable expectation about the quality of the vehicles in question, and they would have behaved differently if they had known about the latent defect.  *Id.* at 1095-96 (*citing Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003); *Daugherty*, 144 Cal. App. 4th at 838; *Chamberlain v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005)).  Specifically, the *Falk* plaintiffs plead that a reasonable consumer would expect that the speedometer would last the lifetime of the vehicle and that they would not have purchased the vehicles or paid less for them if they had known about the defect.  *Id.* at 1096.  The plaintiffs in this case have likewise plead that they reasonably expected that their convertible tops would not have repair-resistant defects (Complaint at ¶ 69) and that they would not have bought the vehicles or would have paid less for them had they known of the defect. (Complaint at ¶ 5)

### 2.      Exclusive Knowledge of Material Fact

Under the second *Judkins* prong, a duty to disclose exists "when the defendant had exclusive knowledge of material facts not known to the plaintiff." *Judkins*, 52 Cal. App. 4th at 337.  In *Falk v. General Motors*, the court found that the plaintiffs

had plead that the Defendant had exclusive knowledge based upon allegations that "[o]nly GM had access to the aggregate data from its dealers[,] only GM had access to pre-release testing data[, and] only GM had access to the numerous complaints from its customers."  496 F. Supp. 2d at 1096.  These allegations, the *Falk* court stated, were sufficient for the purposes of a Rule 12(b)(6) motion to demonstrate that the Defendant had exclusive knowledge of the material defect.

Similarly, the Plaintiffs in this case plead that BMW had exclusive knowledge based upon "pre-release testing data, early consumer complaints about the defect to Defendant directly and its dealers, testing and investigations conducted in response to these complaints, replacement parts sales data, aggregate data about the convertible top defect from BMW's dealers, including high number of warranty reimbursement claims (contained in BMW's warranty database), and from other internal sources that are only accessible to BMW."  (Complaint at ¶ 48)  Additionally, the Plaintiffs in the cases plead that BMW knew about the problem based upon its appearance in the TSB in 2005.  For these reasons, Plaintiffs have stated a claim that BMW had exclusive knowledge of the materially defective convertible tops.

### 3.    *Active Concealment of a Material Fact*

The third *Judkins* prong creates a duty to disclose "when the defendant actively conceals a material fact from the plaintiff."  *Falk*, 496 F. Supp. 2d at 1097 (*citing Judkins*, 52 Cal. App. 4th at 337).  Plaintiffs allege that BMW was aware of this safety problem as early as 2004 and did not warn customers about it.  (*See* Complaint at ¶ 63)  Plaintiffs allege that BMW became aware of the problem via pre-release testing data, early consumer complaints about the defect directly to BMW and its dealers, testing and investigations conducted in response to those complaints, replacement parts sales data, aggregate data about the convertible top defect from BMW's dealers, including a high number of warranty reimbursement claims (contained in BMW's warranty databases), and from other internal sources.  (Complaint at ¶ ¶ 2, 5, 62)  Plaintiffs allege that the TSBs demonstrate knowledge of the defect.  Plaintiffs also allege that BMW advised dealers to make temporary repairs to ensure that the manifestation of the defects occurred outside the warranty period, thereby shifting financial responsibility for the defect onto consumers.  (Complaint at ¶ 14)  Plaintiffs allege that BMW chose this method of addressing the problem rather than recalling the vehicles to make a permanent top repair.  (Complaint at ¶ 18)  Moreover, Plaintiffs allege that BMW marketed its cars as "designed perfectly" in spite of this serious, known defect.  (Complaint at ¶ 63)

These facts, when accepted as true, create the plausible inference that Defendants actively concealed the known defect with the convertible top.

For these reasons, Defendant's motion to dismiss the CLRA cause of action is denied.

### C.      California Business & Professions Code § 17200 (Unfair Competition Law)

Plaintiffs claim that Defendants' actions violated California's Unfair Competition Law.  The UCL prohibits acts or practices which are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof. Code § 17200.  Allegations of unlawful and unfair practice are premised upon the successful pleading of CLRA violations. *See Falk*, 496 F. Supp .2d at 1098.  For these reasons, the UCL claim survives the motion to dismiss.

### D.      Song-Beverly Act

The Song-Beverly Act is pro-consumer legislation intended to expand the protections of the implied warranty of merchantability beyond that in the Uniform Commercial Code.  *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303-04 (2009).  The Song-Beverly Act expressly provides that the implied warranty of merchantability for used goods runs "coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warranty be less than 30 days or more than three months following the sale of used consumer goods to a retail buyer."

The viability of Plaintiffs' Song-Beverly Act claim is contingent upon the existence of an applicable express warranty at the time of sale.  Plaintiffs argue that the 12-year/unlimited-mile rust performance warranty, the 8-year/80,000-mile emission warranty, and the 7-year/70,000-mile California emission warranty make the Song-Beverly Act implied warranty apply to their vehicles.

In *Larsen v. Nissan N. Am.*, A121838, 2009 WL 1766797 (Cal. Ct. App. June 23, 2009), the court rejected the bootstrapping argument that George and Gray make here.  In *Larsen*, the plaintiffs purchased cars with expired general warranties.  The cars had defective ignition coils.  The *Larsen* plaintiffs argued that the Song-Beverly implied warranty should apply because, even though the general warranty covering

the ignition coils had expired, the vehicles had unexpired warranties on other specific parts.  The *Larsen* court found that its plaintiffs' arguments ran contrary to principles of contract interpretation and the purpose of the implied warranty of merchantability itself.

The *Larsen* court reasoned that the bootstrapping would violate principles of contract interpretation.  Specifically, the court stated, "A general rule of contract interpretation is that the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.  The rule's effect, among other things, is to disfavor constructions of contractual provisions that would render other provisions surplusage." *Larsen*, 2009 WL 1766797, at \*2.  Where, as here, the express warranties that have a greater duration cover a narrower range of the car's mechanical systems, "[p]laintiffs' argument would render this careful delineation of the terms of the various express warranties mere surplusage by using the implied warranty of merchantability to extend all warranties to the duration of the longest among them."  *Id.* at \*6.

Moreover, the *Larsen* court reasoned that the nature of the implied warranty of merchantability did not justify an extension of the Song-Beverly protections to the date that the longest component warranty expired for two reasons: (1) the implied warranty of merchantability is not designed as an extended warranty, and (2) the implied warranty of merchantability only guarantees a minimal level of quality.  *Id.* at \*6.

Plaintiffs' argument that the Song-Beverly warranty of merchantability should bootstrap to the unexpired rust and emissions warranties is unpersuasive for the three reasons set forth in *Larsen*:  (1) bootstrapping would render BMW's careful delineation of various warranties mere surplusage; (2) bootstrapping would run contrary to the limited duration of the implied warranty of merchantability; and (3) Plaintiffs have not plead that the roof-top defect would render the cars unusable.  *See id.* at \*6.

For these reasons, Defendant's motion to dismiss the cause of action for a violation of the Song-Beverly Act will be granted.

### E.      Common Law Fraud

The elements of fraud are:  (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Fraud claims must be plead with particularity.  *See* Fed. R. Civ. P. 9(b). However, in cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the standard is relaxed.  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).  In *Falk*, the court concluded that Defendant knew about the alleged defect in its speedometers but failed to alert customers or repair them.  *Id.* at 1099.  In a case with a fraudulent omission, plaintiff pleads justifiable reliance just by alleging that a reasonable customer would not have paid the asking price had the defect been disclosed.  *Id.* at 1099.  This relaxed standard applied in *Falk* notwithstanding the fact that the express warranty on the vehicles had expired.

In this case, which is factually similar to *Falk*, Plaintiffs have plead that BMW had knowledge of the defective convertible top and yet knowingly concealed the defect from purchasing customers in order to place the burden of replacing the convertible tops onto consumers.  Plaintiffs plead that they justifiably relied on the omission by paying full price for the BMWs when they would not have if BMW had disclosed the defect.  The resulting damages are the cost of repairs.

## F.    Unjust Enrichment

"The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'"  *Continental Casualty Co. v. Enodis Corp.*, 417 Fed. App'x 668, 670 (9th Cir. 2011) (*quoting Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000)).  In this case, Plaintiffs paid independent BMW dealers for used cars.  Plaintiffs have not stated how the purchase from the used car dealers enriched BMW.  For this reason, the claim for unjust enrichment will be dismissed.

## G.    Duty of Good Faith and Fair Dealing

Under California law, a cause of action for a breach of the duty of good faith and fair dealing does not exist in the absence of a relevant contract.  *See Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (Cal. Ct. App. 2004). There is no underlying contract between BMW and Plaintiffs that is relevant to this claim.  While there were certain unexpired warranties on the Plaintiffs' vehicles at the time of purchase, these warranties did not concern the convertible tops.  In the absence of a valid contract, the claim for breach of the duty of good faith and fair

dealing must be dismissed.  *See Naranjo v. SBMC Mortgage*, 11-CV-2229-L WVG, 2012 WL 3030370, at *10 n. 6 (S.D. Cal. July 24, 2012).

### H.    Request to Strike Class Allegations

Defendant also requests that the court strike Plaintiffs' class allegations.  To do so would be premature in this case.

Federal Rule of Civil Procedure 12(f) permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, "[m]otions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  *See Sliger v. Prospect Mortgage, LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (*citing* 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380).  Motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.  *Holak v. Kmart Corp.*, 1:12-CV-00304 AWI, 2012 WL 6202298 (E.D. Cal. Dec. 12, 2012) (*citing Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)).  Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, and discovery is therefore integral.  *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).  Given the early stage of the proceedings, the Court finds that Defendants' request to strike the class allegations is premature.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The following counts of the Complaint are hereby dismissed:

1.) Count 1: New Jersey Consumer Fraud Act
2.) Count 3: Breach of Duty of Good Faith and Fair Dealing
3.) Count 4: Unjust Enrichment
4.) Count 7: Song-Beverly Act

An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 28, 2014**