NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT GRAY and MARKUM GEORGE,** individually on behalf of a class similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**BMW OF NORTH AMERICA, LLC and BMW AKTIENGESELLSCHAFT,**<br><br>Defendants. | Docket No.: 13-cv-3417-WJM-MF<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Co-Defendant BMW Aktiengesellschaft ("BMW AG") filed this motion to dismiss pursuant Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **DENIED**.

**I.   BACKGROUND**

This is a putative class action regarding certain BMW convertible models. The Complaint's factual basis was fully discussed in the court's May 28, 2014 opinion granting in part co-Defendant BMW of North America, LLC's ("BMW NA") motion to dismiss. ECF No. 21; *Gray v. BMW of N. Am., LLC*, 13-CV-3417-WJM-MF, 2014 WL 2208131 (D.N.J. May 28, 2014). BMW AG is a German entity residing in Munich, Germany. BMW NA refused to accept service on BMW AG's behalf. ECF No. 19. On March 31, 2014, Plaintiffs requested an order to permit APS International Ltd. to serve BMW AG in accordance with the Hague Convention. ECF No. 19. On April 17, 2014, the court granted the request. ECF

No. 20. Service was apparently successful, as BMW AG has filed this motion to dismiss.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## III.   DISCUSSION

By order dated May 28, 2014, the court dismissed several counts of Plaintiffs' Complaint: Count 1 (Violation of New Jersey Consumer Fraud Act), Count III (Breach of the Duty of Good Faith and Fair Dealing), Count 4 (Unjust Enrichment), and Count 7 (Violation of California's Song-Beverly Act). The findings supporting the dismissal of these claims were not specific to BMW NA. Dismissal was effective as to all parties.

BMW AG advances additional arguments for dismissing Count 2 (Common

Law Fraud), Count 5 (Violation of California's Consumer Legal Remedies Act), and Count 6 (Violation of California's Unfair Competition Law).  Finding BMW AG's arguments unpersuasive, the court denies the motion in regards to those causes of action.

### A. Specificity of Fraud Pleadings

BMW AG argues that Plaintiffs' common law and statutory fraud claims fail to meet the specificity requirements of Federal Rule of Civil Procedure 9(b) because Plaintiffs do not distinguish the acts of BMW NA from the acts of BMW AG.  Considering that this is a case of an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, the Plaintiffs need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard.

Under Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendants on notice of the "precise misconduct with which they are charged."  *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004).  "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n. 2 (3d Cir. 2003).  A plaintiff "must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

"Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'"  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (*quoting Christidis v. Pennsylvania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should . . . apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.").  "Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs."  *Craftmatic*, 890 F.2d at 645 (*citing Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).  "In cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the standard is relaxed."  *Gray v. BMW of N. Am., LLC*, 13-CV-3417-WJM-MF, 2014 WL 2208131, at *9 (D.N.J. May 28, 2014) (*citing Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)).

BMW AG's argument that the Plaintiffs failed to meet the Rule 9(b) standard by not specifying how BMW AG's acts differed from BMW NA's acts is not persuasive. BMW AG relies primarily upon an unpublished district court case, *Pappalardo v. Combat Sports, Inc.*, CIV.A. 11-1320 MLC, 2011 WL 6756949 (D.N.J. Dec. 23, 2011). *Pappalardo* was a putative class action against several manufacturers of composite barrel baseball bats. The manufacturers allegedly labeled the bats as having a "bat performance standard" or "BPF of 1.15 or lower" when in fact, the bats did not maintain that BPF once in use. *Pappalardo* states, "Failure to inform each defendant as to the specific fraudulent acts alleged against it contravenes the pleading requirements of Rule 9(b)." *Id.*, at \*4. The *Pappalardo* court stated in its analysis that the Complaint lumped all the manufacturers together as the "Manufacturer Defendants" without "distinguishing the acts or omissions of any one named Manufacturer Defendant from any other." *Id.*, at \*4.

However, this particular finding of the *Pappalardo* court is immaterial to the dismissal on Rule 9(b) grounds of the *Pappalardo* Complaint. Earlier in the *Pappalardo* opinion, the court notes that each of the Manufacturer Defendants were accused of the same action, so specifying what each Manufacturer Defendant did would have been redundant and thus unimportant in the final analysis.

Functionally, dismissal of the fraud claims in *Pappalardo* relied upon other failings of the Complaint: failure to identify the bats in question and failure to explain the meaning of "BPF of 1.15 or lower." Theses failures were critical, as they went to Rule 9(b)'s underlying policy of providing notice to the Defendants. Without informing the Manufacturer Defendants what "BPF of 1.15 or lower" meant or which bats were affected, the *Pappalardo* court properly concluded that the Complaint failed to put the Defendants on notice of the allegations.

Here, by contrast, Plaintiffs' Amended Complaint adequately puts BMW AG on notice of the allegations against it – that it "had exclusive knowledge" of the defect based upon "pre-release testing data, early consumer complaints about the defect to Defendant directly and its dealers, testing and investigations conducted in response to these complaints, replacement parts sales data, aggregate data about the convertible top defect from BMW's dealers, including high number of warranty reimbursement claims (contained in BMW's warranty database), and from other internal sources that are only accessible to BMW." *Gray v. BMW of N. Am., LLC*, 13-CV-3417-WJM-MF, 2014 WL 2208131 (D.N.J. May 28, 2014) (*quoting* Complaint at ¶ 48). Another alleged source of BMW AG's knowledge was the alleged communication regarding servicing and warranting between BMW NA and

BMW AG.  Complaint at ¶ 43.  Moreover, the Complaint alleges that "BMW" actively concealed the defect by advising dealers "to make temporary repairs to ensure that the manifestation of the defects occurred outside the warranty period, thereby shifting financial responsibility for the defect onto consumers" and by not having a recall.  *Gray v. BMW of N. Am., LLC*, 13-CV-3417-WJM-MF, 2014 WL 2208131, at *7 (D.N.J. May 28, 2014) (*citing* Complaint at ¶¶ 14, 18).  The Complaint explicitly alleges that BMW AG is involved in the manufacture, exporting, and warranting of the subject convertibles, Complaint at ¶ 42, and thus it is plausible that BMW AG had an interest in shirking responsibility for the alleged defects.  Taken together, all these alleged facts adequately put BMW AG on notice that the undifferentiated "BMW" referenced in the Complaint's interior refers in part to BMW AG and its involvement with the intentional efforts to conceal information about the defect from consumers and shift financial responsibility for repairs onto them.

It would be wrong to require Plaintiffs at this procedural posture to separate the specific role of BMW AG from the role of BMW NA in perpetrating the alleged fraudulent concealment.  Because this is a fraudulent concealment case involving the internal doings of a sophisticated corporation, those facts are within the Defendants' knowledge and are properly to be determined through discovery, not on a motion to dismiss.  *See Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.,* 171 Cal. App. 4th 1356, 1384-85 (2009) (finding that it was not necessary for the Plaintiffs to allege the detailed minutiae of how, when, and where certain non-disclosures or concealment took place and that the details of the concealment were "properly the subject of discovery, not demurrer.").

**B.    California Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL)**

BMW AG notes that the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction* intended to result or which results in the sale or lease of goods or services to a consumer."  Cal. Civ. Code § 1770(a) (emphasis added).  The CLRA defines "a transaction" broadly as "*an agreement* between consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code § 1761(e) (emphasis added); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3.

BMW AG argues that the CLRA cause of action should be dismissed because

5

Plaintiffs do not allege any agreement between Plaintiffs and BMW AG.  This argument is not persuasive.  The CLRA is to be interpreted liberally to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.  *Keilholtz, supra*, at * 3.  Although neither party has cited binding case law directly on point, the weight of persuasive authority stacks heavily against BMW AG.  Recently, the Defendant in the case *Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) made the same argument that BMW makes here.  The *Rossi* court agreed that the weight of persuasive authority falls heavily against the position that BMW takes here:

> Defendant contends that Plaintiffs' CLRA claim fails because Plaintiffs bought their refrigerators from third-party vendors and not directly from Defendant. Defendant has not cited any cases in support of its contention. In contrast, Plaintiffs have provided the Court with numerous cases supporting their contention that a direct sale is not required to allege a CLRA claim.  *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010); *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at *3-4 (N.D. Cal. Mar. 30, 2009); *Chamberlan v. Ford*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005). These cases demonstrate that where a manufacturer had exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer.  *See Tietsworth*, 720 F. Supp. 2d at 1140; *Keilholtz*, 2009 WL 839076, at *3-4; *Chamberlan*, 369 F. Supp. 2d at 1144. Accordingly, the Court finds that Plaintiffs have adequately pled their CLRA claim.

*Id.*, at *10; *see also McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 186 (Cal. App. 1st. Dist. 2010) ("We also pause here to note that a cause of action under the CLRA may be established independent of any contractual relationship between the parties."); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by section 1770 may bring an action against that person.").

In *Chamberlan v. Ford Motor Co.*, C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003), the court explained:

6

> "[B]efore the [CLRA] was passed, the legislature . . . expanded the range of illegal acts and practices to include those "undertaken by any person in a transaction *intended to result* or which results in the sale or lease of goods or services to any consumer." Nothing in the language of the CLRA states that only a defendant who directly engaged in a completed transaction with a plaintiff may be liable to that plaintiff. Viewed in light of the provision to construe the statute liberally, the broad language of the statute suggests that the legislature intended the CLRA to cover a wide range of business activities.

*Id.*, at * 7 (emphasis added).

BMW AG cites one unpublished district court case, *Green v. Canidae Corp.*, CV 09-0486 GAF PLAX, 2009 WL 9421226 (C.D. Cal. June 9, 2009) for the proposition that a "transaction" under the CLRA does not occur between a consumer and a manufacturer where the manufacturer does not sell directly to the consumer. *Green* was a suit that pet-owners brought against the manufacturer of a pet food that sickened pets. The *Green* court dismissed the pet-owners' claims, finding that because the pet-owners purchased the pet food from retailers, not from the manufacturer, there was no "transaction" giving the pet-owners standing to sue the manufacturer. In support of this conclusion, the *Green* court states:

> In circumstances like those in issue in this case, the manufacturer never transacted business or intended to transact business with the consumer. The CLRA outlaws unfair practices "undertaken by any person in a transaction *intended to result* or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). A transaction is defined as "an agreement between a consumer and any other person." *Id.* § 1761(e). Finally, the statute itself describes the underlying purposes of the CLRA as "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760 (emphasis added). Thus, the Court finds the legislation clearly contemplates consumer transactions between a consumer and a retail seller, and does not apply to commercial transactions between a retailer and its vendors to acquire a supply of goods for resale.
>
> In so holding, the Court declines to adopt the reasoning of *Chamberlan v. Ford Motor Co.,* No. C 03–2628 CW, 2003 WL 25751413, *7-8 (N.D. Cal. Aug. 6, 2003), in which the district court held plaintiffs could bring a CLRA claim against Ford, despite the fact

7

> that they purchased their car from a used car dealer and not from the car manufacturer itself. The Court is not persuaded by the *Chamberlan* court's interpretation of the CLRA's "intended to result" language as extending the statute's application to transactions that do not directly involve a consumer. The implication of that court's holding is to apply the CLRA to all vendor transactions as long as they are present somewhere in the chain of sale of a consumer good. The CLRA does not contemplate that result.

*Green v. Canidae Corp.*, 2009 WL 9421226, at *4 (emphasis added).

Not only does the weight of the persuasive authority fall against *Green*, but *Green*'s analysis itself is not persuasive. It is hard to say with certainty how remote the relationship between a plaintiff-consumer and a defendant has to be before the CLRA no longer provides a cause of action for the plaintiff-consumer. However, it seems clear to this court that where the CLRA states that it applies to a transaction "intended to result . . . in the sale of goods," that it contemplates the sale of goods between a manufacturer and a retailer who then sells directly to plaintiff-consumers. This is because when a manufacturer sells to a retailer, the manufacturer intends for the retailer to re-sell the goods directly to consumers. *Green* concludes summarily that that permitting consumers to directly sue the manufacturers would contradict the dual CLRA purposes of consumer protection and efficiency. *Id.*, at *4. But *Green* states no reason for so concluding. On the contrary, it seems to this court that preventing consumers from suing manufacturers under the CLRA would require them to resort to less consumer-friendly causes of action for breach of warranty or common law fraud. For all the reasons stated above, the court denies BMW NA's motion with regard to the CLRA cause of action.

BMW AG argued that if the CLRA cause of action were to be dismissed, then this court would also have to dismiss the UCL cause of action. This is because allegations of unlawful and unfair practices under the UCL are premised upon the successful pleading of CLRA violations. *See Falk,* 496 F. Supp. 2d at 1098. But since BMW AG fails to persuasively argue that the CLRA cause of action should be dismissed, the UCL cause of action will not be dismissed either.

## IV.     CONCLUSION

For the reasons stated above, BMW AG's motion to dismiss is **DENIED**.  An appropriate order follows.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 23, 2014**