# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————

ROBERT GRAY, and MAKRUM GEORGE, : Civil Action No. 2:13-cv-3417(WJM)(MF)
individually, and on behalf of a class of :
similarly situated individuals, :
                                           :
                     Plaintiffs, :
                                           :
                 v. :
                                             :
BMW OF NORTH AMERICA, LLC, and :
BAYERISCHE MOTOREN WERKE :
AKTIENGESELLSCHAFT, :
                                           :
                     Defendants. :
                                           :

—————————————————————

---

**DEFENDANTS' BRIEF IN RESPONSE TO
PLAINTIFFS' MOTION FOR APPROVAL OF
ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

---

                         Rosemary J. Bruno
                         Christopher J. Dalton
                         Daniel Z. Rivlin
                         BUCHANAN INGERSOLL & ROONEY PC
                         Incorporated in Pennsylvania
                         550 Broad Street, Suite 810
                         Newark, New Jersey 07102
                         973-273-9800
                         Attorneys for Defendants,
                          BMW of North America, LLC and
                          Bayerische Motoren Werke Aktiengesellschaft

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

LEGAL ARGUMENT................................................................................................2

     I.      This Is A Claims-Made Settlement. Fees Should Be Awarded Under
           The Lodestar Method ...............................................................................2

     II.     Plaintiffs' Submissions Are Inadequate To Allow The Court To Determine
           Whether The Hours Expended Were Reasonable And Necessary ..........................3

     III.    The Kleckner Declaration Is Based Upon Incorrect Assumptions,
           Mistaken Facts, And Inflated Statistics, It Should Be Disregarded........................7

          A.  Kleckner Overestimates The Number Of Class Vehicles
              On The Road That *May* Need The Benefits Of The Settlement ......................8

          B.  Plaintiffs' Calculation Double-Counts Certain Settlement Benefits ................9

          C.  Not Every Class Vehicle Remaining On The Road Will Need
              The Benefit Of The Settlement, Nor Need It More Than Once.....................10

          D.  Only 2,315 Claims For Reimbursement Had Been Submitted
              When Plaintiffs' "Expert Report" Was Prepared.............................................11

     CONCLUSION.....................................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AmeriSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)................................................................3

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)................................................................8

*Carmen v. S.F. Unified School Dist.*,
   237 F.3d 1026 (9th Cir. 2001) ............................................................8

*Damian J. v. Sch. Dist. of Phila.*,
   2008 WL 1815302 (E.D. Pa. Apr. 22, 2008) .....................................6

*Daubert II*, 43 F.3d 1311 (9th Cir. 1995) ...............................................8

*In re Diet Drugs*,
   582 F.2d 524 (3d Cir. 2009).................................................................3

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...............................................................8

*Keenan v. City of Philadelphia*,
   983 F.2d 459 (3d Cir. 1992).............................................................4, 6

*Mary Courtney T. v. Sch. Dist. of Phila.*,
   2009 WL 185426 (E.D. Pa. Jan. 22, 2009), *aff'd in part, rev'd in part sub nom.*
   *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235 (3d Cir. 2009).....................................5

*McLennan v LG Electronics USA, Inc.*,
   No. 2:10-cv-03604 (WJM), 2012 WL 686020 (D.N.J. Mar. 2, 2012).......................................2

*Neena S. v. Sch. Dist. of Philadelphia*,
   2009 WL 2245066 (E.D. Pa. July 27, 2009).......................................5

*Oh v. AT & T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004)..............................................................4

*Pennsylvania Environmental Defense Fund v. Canon–McMillan School District*,
   152 F.3d 228 (3d Cir. 1998)..................................................................4

*Port Drivers Federation 18, Inc. v. All Saints*,
   2011 WL 3610100 (D.N.J. Aug. 16, 2011) ..........................................4

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1988)..............................................................................4, 5, 6

*Washington v. Phila. Cnty. Court of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996)................................................................................5

**Statutes**

California Consumer Legal Remedies Act, California Civil Code §1750 *et seq.* ..........................3

California's Unfair Competition Law, California Business & Professions Code
   § 17200 *et seq.* .................................................................................................3

**Other Authorities**

Civ. R. 54.2 .....................................................................................................6

Civ. R. 54.2(a)..................................................................................................6

## PRELIMINARY STATEMENT

Defendants, BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), oppose the fee application submitted by Class Counsel.

The Parties negotiated a Settlement Agreement that delivers specific relief to members of the Settlement Class.  That relief includes a software update for all Class Members, and a claims process for Class Members to submit claims for reimbursement of certain previously incurred repair costs.  No fund is created.  No amount is guaranteed to be paid out in claims.

The Settlement Agreement sets a "low - high" range for attorneys' fees, costs and expenses.  Defendants agreed not to object to a fee application for up to $944,000, and Plaintiffs agreed not to seek more than $1,869,000.  Fees and costs will be paid by Defendants to Class Counsel "without reducing the relief being made available to Class members," and "will be paid separate and apart from any relief provided to the Class." (DE 66-2, Settlement Agreement, Section IV. E.4. and Section VIII.B.).  Defendants reserved the right to object to any application over $944,000.  (DE 66-2, Settlement Agreement, Section VIII. B.).   Plaintiffs now ask this Court to award them the highest amount they could possibly collect.  Defendants oppose any award above $944,000.

Plaintiffs' fee motion is based on an erroneous characterization of this "claims-made" settlement as creating a "common fund."  There is no fund.  Therefore, Class Counsel's use of percentage of the common-fund as a measure for recovery is wrong.

Rather, Class Counsel's fee application should be determined using the lodestar method. But Class Counsel gives this Court a few pages of conclusory and summary information about the time they claim to have spent litigating the case over the last four years.  The information is insufficient to allow the Court to make the required evaluation of the reasonableness of the fees

sought.

Finally, the "expert report" of Kirk D. Kleckner is little more than an *ex post facto* effort to justify Class Counsel's attempt to obtain the maximum possible fee under the Settlement Agreement.

**LEGAL ARGUMENT**

**Point I**

**This Is A Claims-Made Settlement.**
**Fees Should Be Awarded Under The Lodestar Method.**

Plaintiffs incorrectly characterize the settlement as a "common fund" settlement. They are equally wrong in proposing that fees should be calculated under a percentage of recovery method. (DE 77-1 at p.3).

As clearly set forth in the Settlement Agreement, relief is being provided to Class Members in two ways. First, Class Members may schedule an appointment with a BMW Center for installation of updated software at no cost to the Class Member. (DE 66-2, Settlement Agreement, Section III.A.) Second, Class Members may be reimbursed for out-of-pocket expenses incurred for repairs upon submitting a claim with appropriate documentation. (DE 66-2, Settlement Agreement III.B.). Defendants have committed no minimum amount for payment of claims, nor is there any maximum amount that Defendants will pay to Class Members for out-of-pocket claims. No fund has been set aside or created. As this Court has stated, "settlement with an indefinite total value and no upper cap on relief" is a claims-made settlement. *McLennan v LG Electronics USA, Inc*., No. 2:10-cv-03604 (WJM), 2012 WL 686020 (D.N.J. Mar. 2, 2012). In a claims-made settlement, the lodestar method is the appropriate method for the Court to apply in evaluating an application for attorneys' fees. *Id.*

2

In addition, the lodestar method is appropriate here because plaintiffs' claims were brought under fee-shifting statutes, the California Consumer Legal Remedies Act, California Civil Code §1750 *et seq.*, and California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.* (Corrected First Amended Complaint, Counts V and VI).  The appropriate method for determining an award of attorneys' fees in a statutory fee-shifting action is the lodestar method.  *AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002).  As plaintiffs' own brief recites, "The lodestar method … is more typically applied in statutory fee-shifting cases." (DE 77-1 at p.4)(citing inter alia, *In re Diet Drugs*, 582 F.2d 524, 540 (3d Cir. 2009).

<u>**Point II**</u>

<u>**Plaintiffs' Submissions Are Inadequate To Allow The Court To Determine Whether The Hours Expended Were Reasonable And Necessary.**</u>

Class Counsel submitted nothing more than summary charts to support their present fee application.  (DE 77-2 at p.11, ¶ 41; DE 77-3 at p.17; DE 77-4 at p.5).  That is insufficient. Nothing is provided by way of detailing in any definite way who did what.  No dates are provided to inform the Court when something was done.  No information is submitted showing how much time was devoted to any specific activity on any specific date by any specific person at any specific rate.  Indeed, no dates are provided at all, no tasks are described except in the broadest terms -- such as "Pre-filing investigation and pleadings," "Post-filing investigation," "discovery," "research," and "Motions."  Without specifics -- names, dates, tasks, time expended, rates -- there is no way for the Court to determine whether the work was or was not necessary, was or was not duplicative, or was or was not appropriate.  In the real world, no client would accept such a summary recitation and no attorney would expect to be paid in full based on

the summary charts submitted to this Court.[1]

A fee application seeking compensation must document the hours for which payment is sought "with sufficient specificity." *Keenan v. City of Philadelphia*, 983 F.2d 459, 472 (3d Cir. 1992). The application must be "specific enough to allow the district court to 'determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1988) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).

"A lodestar award is calculated by multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Oh v. AT & T Corp.*, 225 F.R.D. 142, 153 (D.N.J. 2004). However, "[h]ours that are 'excessive, redundant, or otherwise unnecessary' are not reasonably expended on the litigation and must be excluded from the lodestar calculation." *Port Drivers Federation 18, Inc. v. All Saints*, 2011 WL 3610100, at *1 (D.N.J. Aug. 16, 2011) (quoting *Pennsylvania Environmental Defense Fund v. Canon–McMillan School District*, 152 F.3d 228, 231 (3d Cir. 1998)).

Ultimately, the documentation submitted must provide enough information as to what hours were spent and on what activities and by whom in order to determine if the fees sought are reasonable. In *Rode*, the Third Circuit found documentation in which each time entry provided the general nature of the activity, the subject matter of the activity (where possible), the date of the activity, and the amount of time worked on the activity to be sufficient:

> Appellants submitted a computer-generated time sheet for each attorney, paralegal and law clerk who worked on the case. In each instance, the time sheet was in chronological order. Each entry provided the general nature of the activity and the subject matter of

---

[1] Legend has it that attorneys used to submit annual bills to clients with little more than "for services rendered." If ever those days existed, they are long gone. Most certainly in the context of a contested fee application in a class-action settlement.

4

> the activity where possible, e.g., T (Dusman); CF (client); R (re appeals), the date the activity took place and the amount of time worked on the activity. In some instances, appellants aggregated the work in a day on various activities. Lastly, appellants, from October, 1985 to February, 1987, submitted monthly time reports to the district court. These reports were very specific and did not include the abbreviations which the district court had difficulty interpreting. These various submissions provided enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable.

892 F.2d at 1191 (footnotes omitted).

In *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996), the Third Circuit found that documentation was sufficient under the *Rode* standard because the submission provided enough information to determine if the fees claimed were reasonable. *Id.* at 1038. The court suggested that fee applications with words such as "review," "research," "prepare," "letter to," and "conference with" are acceptable, so long as they provide enough information as to what hours were devoted to various activities and by whom. *Id.* (citing *Rode*, 892 F.2d at 1191).

Other examples of acceptable supporting documentation include:

- Time entries for bills consisting of almost 60 pages chronologically listing the dates when the work was performed, the initials of the individual attorney or staff that performed the work, the nature of the work, the time spent on the work, the hourly rate charged, and the total billable cost for each time entry was sufficient. *Neena S. v. Sch. Dist. of Philadelphia*, 2009 WL 2245066, at *4 (E.D. Pa. July 27, 2009).

- A 50 page document chronologically listing the dates when the work was performed, the initials of the attorney performing the work, the time spent by each attorney on each task, and a brief description of the work performed was found to be sufficiently specific. *Mary Courtney T. v. Sch. Dist. of Phila.*, 2009 WL 185426, at *3-4 (E.D. Pa. Jan. 22, 2009), *aff'd in part, rev'd in part sub nom. Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235 (3d Cir. 2009).

- Plaintiffs' itemized, chronological list of "the dates when the work was performed, the nature of the work, the time spent by individual attorney or

5

staff, the hourly rate charged, and the total billable cost for that time entry" was sufficiently specific. *Damian J. v. Sch. Dist. of Phila.*, 2008 WL 1815302, at *4 (E.D. Pa. Apr. 22, 2008).

- Summaries showing the daily activities of attorneys and paralegals, with one summary in chronological order with the date, time expended, and a general description of the activities provided by each attorney, and a second summary with attorneys' time spent in various general activities such as arbitration, pretrial preparation, and trial, met the specificity standard. *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992). However, a separate portion of the fee application for an attorney's hours from 1987-1989 which only included monthly cumulative hours was found to be insufficiently specific. *Id.* at 473-74.

Thus, the critical inquiry is whether the materials submitted contain enough specificity to permit the court to determine whether the "'the hours claimed are unreasonable for the work performed.'" *Rode* 845 F.2d at 1190 (quoting *Pawlak*, 713 F.2d at 978).

Consistent with Third Circuit case law, the District of New Jersey has adopted a local rule governing applications for attorneys' fees, costs, and expenses. *See* L. Civ. R. 54.2. That rule provides, in relevant part, that the affidavits or other documents supporting a fee application must include the following:

(1)   the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;
(2)   a record of the dates of services rendered;
(3)   a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;
(4)   the time spent in the rendering of each of such services; and
(5)   the normal billing rate for each of said persons for the type of work performed.

L. Civ. R. 54.2(a).  The rule further provides that "[c]omputerized time sheets, to the extent that they reflect the above, may be utilized and attached to any such affidavit or other document showing the time units expended.  Reimbursement for actual, not estimated, expenses may be granted if properly itemized." *Ibid*.

6

Class Counsel's submissions in the present case do not provide the specific information required under Third Circuit case law and this District's local rules.  Rather, the documentation submitted by Plaintiffs' attorneys is merely a summary (for four-years' work) consisting of: (1) the name and title of the person performing the task; (2) the general category of work; (3) the total number of hours spent performing each category of work (as one number for the entire four years); and (4) the total billable amount for the work performed in each category.  The documentation does not include the dates when each task was performed, the amount of time spent on each task, or any indication of what the task was.

Class Counsel's submissions provide no detail about what was actually done, by whom, or when.  For example, Counsel seek fees for "post-filing investigation and discovery" totaling 424.3 hours spread across 10 timekeepers ranging from 2.7 hours to 221.5 hours – yet there is simply no explanation of what was done, by whom, when, or for how long across those 424.5 hours.

It is up to the *Court* to determine whether the "work performed was reasonable."  But Plaintiffs have given the Court *nothing* upon which to make that determination.

## Point III

### The Kleckner Declaration Is Based Upon Incorrect Assumptions, Mistaken Facts, And Inflated Statistics, It Should Be Disregarded.

To substantiate their otherwise defective and unjustifiable request for the highest possible amount of fees under the Parties' "low-high" agreement, Plaintiffs rely upon the "expert report" of Kirk D. Kleckner dated June 22, 2017 (the "Kleckner Report" DE 77-5).  That reliance is misplaced.  The Kleckner Report ignores relevant and readily accessible facts, makes unsubstantiated assumptions, and fails to identify (let alone provide) the support allegedly relied upon.  Plaintiffs' expert's valuation of the settlement at $8.6 million conveniently makes the

$1.869 million fee request appear to be merely 20% of the (non-existent) common fund.  Given

the problems with the Kleckner Report, one can only conclude it is a thinly veiled attempt to

back into fees at the "high" end of the parties' agreement.

Assuming the Court considers this a common fund settlement, which it is not, Kleckner's

valuation is overstated and wrong for several reasons.

        A.      Kleckner Overestimates The Number Of Class Vehicles
                On The Road That *May* Need The Benefits Of The Settlement.

First, by completely ignoring the fact that 37% of the 30,344 potential class vehicles *were*

*already repaired* by BMW before this settlement was reached, Kleckner bloats his valuation of

settlement benefits.

This fact is crucial in that Kleckner's calculations are based on what he believes are all

class vehicles remaining on the road.  Kleckner claims 21,976 class vehicles of the 30,344 total

vehicles originally in the class remain on the road.  He does not say how he reached this

number.[2]  Kleckner fails to account for the fact that of the vehicles remaining on the road, some

of these vehicles were already repaired.  If the 37% repair rate is applied to the 21,976 class

vehicles Kleckner says are still in service, the number of cars potentially needing repair is

_____

[2] Kleckner also fails to provide the support for his claimed calculations of the remaining
class vehicles on the road to begin with.  He generally references "data" from the National
Highway Traffic Safety Administration (NHTSA), however, he neither specifies what data he
used nor references the NHTSA report he relied upon.  Where "an expert opinion is based on
data, a methodology, or studies that are simply inadequate to support the conclusions reached,
*Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos
v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Ellis v. Costco Wholesale
Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (same).  "It is not enough for a witness to tell all she
knows; she must know all she tells." *Carmen v. S.F. Unified School Dist.*, 237 F.3d 1026, 1028
(9th Cir. 2001).  The trial court must examine proffered expert testimony for reliability and must
determine whether there exists any "objective, verifiable evidence that the testimony is based on
'scientifically valid principles.'" *Daubert II*, 43 F.3d 1311, 1317-18 (9th Cir. 1995).  Here, in
failing to provide or even reference the specific "data" he utilized, Kleckner failed to meet the
established requirements for expert testimony.

reduced by 8,131 class vehicles.  Accordingly, that would mean 13,845 (not 21,976) class vehicles remaining on the road could possibly need the relief provided under the settlement.

Using the appropriately adjusted remaining class vehicles on the road (13,845), and accepting for present purposes the remainder of Kleckner's assumptions and calculations, Kleckner's own calculation of value to the class is reduced by over $2,321,000, from $8,510,000 to $6,188,298.  Using Plaintiffs' own improper "common fund" fee calculation of 20.8%, the highest award of fees would be $1,287,165.98.  But even that number, as set forth below, would be too high.

### B.    Plaintiffs' Calculation Double-Counts Certain Settlement Benefits.

The Kleckner Report places a dollar value on an "extended warranty" provided with the free software upgrade (Ex. E to Kleckner Report).  But this is essentially double-counting: Plaintiffs are attempting to include in the valuation both the cost to BMW of installing the warranted software upgrade ($70.15) *plus* what the expert speculates class members might have paid for a hypothetical extended warranty ($21.28) in the event the software upgrade didn't work.  But there is no need for class members to purchase an extended warranty when BMW is warranting the upgraded software.  By assigning separate values to the warranted software upgrade and also to a hypothetical extended warranty, Kleckner is counting twice for the same relief.

After removing the bogus "extended warranty" calculation from Kleckner's calculation, the corrected "value" of the benefits under the settlement would be $5,893,678.

Then again using Plaintiffs' own improper "common fund" fee calculation of 20.8% to the corrected number, the highest award of fees would be $1,225,885.  That amount of fees would still be too high.

C.      Not Every Class Vehicle Remaining On The Road Will Need
        <u>The Benefit Of The Settlement, Nor Need It More Than Once.</u>

Next, Kleckner assumes that each vehicle will have 2 to 3 owners over the course of its useful life and then further assumes that each and every owner in the chain will incur a separate repair expense associated with the class vehicles, as opposed to the potential that every *vehicle* might incur a repair.  This results in the number of repairs doubling or tripling – and, with that, the "value" to the Class.

Even accepting the number of *vehicles* Kleckner believes are still on the road (21,976), and applying the actual claim experience[3] prior to the settlement, the reasonable settlement value further declines:

| Potential Claims from Remaining Class Vehicles on the Road (Plaintiff's Estimate 21,976) | | | | |
|---|---|---|---|---|
| Repair Type | % of Remaining Class Vehicles Still on the Road | Number of Vehicles | Cost per repair | Total |
| Adjust Sensor | 9.50% | 2088 | $168.36 | $351,488.54 |
| Replace Sensor | 27.01% | 5936 | $247.93 | $1,471,642.46 |
| Replace Top | 0.47% | 103 | $10,229.93 | $1,056,620.83 |
| | | | | **$2,879,751.83** |

That number is even further reduced to approximately $1.8 million, when using the correct number of class vehicles remaining on the road that may still need a repair (13,845 not 21,976):

| Potential Claims from Remaining Class Vehicles on the Road (13,845) | | | | |
|---|---|---|---|---|
| Repair Type | % of Remaining Class Vehicles Still on the Road | Number of Vehicles | Cost per repair | Total |
| Adjust Sensor | 9.50% | 1,315 | $168.36 | $221,393.40 |
| Replace Sensor | 27.01% | 3,740 | $247.93 | $927,258.20 |
| Replace Top | 0.47% | 65 | $10,229.93 | $669,495.45 |
| | | | | **$1,818,693.45** |

---

[3] The repair percentages contained herein are based upon the respective percentages of repairs made by BMW to Class Vehicles prior to settlement.

Using the corrected amounts[4], the "value" to the class would be between $2,789,920 and $3,850,978.  Then again applying Plaintiffs' improper "common fund" fee calculation of 20.8% to the corrected numbers, the highest award of fees would be between $580,303 and $801,003.  But even using that range would be incorrect.

        D.       Only 2,315 Claims For Reimbursement Had Been Submitted
                <u>When Plaintiffs' "Expert Report" Was Prepared</u>.

Finally, Kleckner's calculation assumes 100% of the class will make a claim.  That is wrong.  As of the date Kleckner signed his Declaration, it was already known that as of the close of the claims-submission period some 2,315 Class Members had submitted claims[5].  Applying Kleckner's $355.54 average repair cost to the claims actually submitted results in a value of $823,075.10 to the Class.  Then, even applying Kleckner's unsubstantiated "estimated markup" of 25% to 40% for consumer repairs versus Original Equipment Manufacturer warranty costs, the value of repair reimbursement would be between $1,028,843.80 and $1,152,305, not Kleckner's artificially and purposefully inflated value of $6,500,000.  The total "value" would then be between $2,000,070 and $2,123,532[4].

Applying Plaintiffs' improper "common fund" fee calculation of 20.8% to the corrected numbers the highest award of fees would be between $416,015 and $441,695[6].

* * *

In examining the Kleckner Report, it becomes clear that the numbers used and "value estimate" calculated therefrom are little more than an attempt to justify seeking the "high" of the

---

[4] Adding the $971,227 ($70.15 x 13,845) value for the software to the reimbursement amounts.
[5] *See*, Exhibit A to Rivlin Declaration.
[6] As of July 5, 2017, a total of 2,492 claims were timely filed.  An additional 57 claims were untimely filed.  *See*, Exhibit B to Rivlin Declaration.  Using all timely filed claims the total "value" would be between $2,063,001 and $2,186,463 and applying Plaintiffs' improper "common fund" fee calculation of 20.8%, the fee award should be between $429,104 and $454,784.

"low-high" fee range.

Class Counsel's actual claimed fees ($752,307.50) -- though inadequately documented -- are less than the agreed-upon "low" ($944,000).  Appropriately valued, the settlement benefits are between $2 million and $4 million, and the stipulated $944,000 fee is more than fair and adequate compensation to class counsel.

Class Counsel's request for an award of fees of $1,869,000 must be denied.  The Court should award no more than the $944,000 which Defendants agreed to pay without objection.

## CONCLUSION

Without doubt litigation is costly and unpredictable – for both plaintiffs *and defendants*. Both sides here have incurred substantial costs and taken significant risks.  Our Rules and case law allow for an award of fees to class counsel, but the Rules and case law require a certain showing to be made by class counsel to substantiate and justify the quantum of the award.  That required showing has not been made here.  Plaintiffs have failed to support or justify their application to be compensated (for fees, costs, and expenses) at a level above that which Defendants have agreed to compensate them.  Accordingly, the Court should reject Plaintiffs' efforts to obtain compensation above the $944,000 to which Defendants agreed.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By /s/ Daniel Z. Rivlin
     ROSEMARY J. BRUNO
     CHRISTOPHER J. DALTON
     DANIEL Z. RIVLIN
      Attorneys for Defendants
      BMW of North America, LLC and
      Bayerische Motoren Werke Aktiengesellschaft

Dated: July 6, 2017

13