# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT GRAY and MAKRUM GEORGE, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC and BMW AKTIENGESELLSCHAFT,<br><br>        Defendants. | No.: 2:13-cv-3417 (WJM)(MF) |

---

## PLAINTIFFS' RESPONSE TO SETTLEMENT CLASS MEMBERS' OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Payam Shahian (*pro hac vice*)
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

*Attorneys for Plaintiffs and the Proposed Class*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

LEGAL ARGUMENT .................................................................................................... 1

I.   THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF
FAIRNESS, WHICH OBJECTORS HAVE NOT REBUTTED ............................... 1

II.   THE COURT SHOULD OVERRULE THE OETTING OBJECTION ..................... 4

III.   THE COURT SHOULD OVERRULE THE SIBLEY OBJECTION ........................ 8

A.   Mr. Sibley is a Serial Objector ......................................................... 8

B.   The Sibley Objection Is Facially Defective ...................................... 11

C.   The Notice Plan was Adequate and Appropriate ............................. 11

D.   There are no Intra-Class Conflicts ................................................... 12

E.   Plaintiffs Have Presented a Reasonable and Conservative
Settlement Value ............................................................................... 13

F.   Class Members Were Provided Adequate Opportunity to Object
to the Request for Attorneys' Fees .................................................. 16

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

CASES

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).....................14

*Browne v. Am. Honda Motor Co., Inc.*, No. 09-cv-06750, 2010 WL 9499072 (C.D. Cal. July 29, 2010)....................................................................................................6

*Cassese v. Williams*, 503 Fed.Appx. 55 (2d Cir.2012) .................................................16

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ..................................................7

*City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974)....................................4

*Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J. 2010)..................................12

*Glass v. UBS Financial Servs., Inc.*, No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...................................................................................................6

*Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000)........................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................2, 6

*Henderson v. Volvo Cars of North America*, LLC, 2013 WL 1192479 (D.N.J. March 22, 2013).................................................................................................6

*In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603 (W.D.Mo.2011)..................................15

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751 (S.D. Ohio 2008) ..........................8

*In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001........................................3

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003)......................................................................................................8

*In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386 (3d Cir. 2004)...........................13

*In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ...........................................1

*In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y. 2010) ..............................8

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)..........................13

*In re Nat'l Football League Players Concussion*, 821 F.3d 410 (3d Cir. 2015) ........................17

*In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53 (3d Cir. 2014) ............................ 19

*In re Nutella Mktg. & Sales Practices*, No. CIV.A. 11-1086 FLW, 2012 WL 6013276 (D.N.J. Nov. 20, 2012) ................................................................... 19

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) ............................ 15

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 347 (3d Cir. 2010) ....................................... 13

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F. 3d 283 (3d Cir. 1998) ....................................................................................... 2

*In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F. Supp. 450 (D.N.J. 1997) ................................................................................... 2

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004) ................................... 2

*In re: Mercury Interactive Corp Securities Litig.*, 618 F.3d 988 (9th Cir. 2010) ....................... 16

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................. 14

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) .................................................. 1

*Moore v. City of San Jose*, 615 F.2d 1265 (9th Cir. 1980) ......................................................... 4

*Myers v. Medquist, Inc.*, No. 05-4608, 2009 WL 900787 (D.N.J. Mar. 31, 2009) ....................... 1

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. Appx. 489 (9th Cir. 2009) ....................................................................... 7

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ......................................................................................... 2, 6

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ......................... 16

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................... 8

*Snell v. Allianz Life Ins. Co.*, No. 97-2784 (RLE), 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ................................................................................................. 8

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ....................................................... 1

*Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003) ............................................ 6

*United States v. State of Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................................. 4

*Weinberger v. Kendrick*, 698 F. 2d 61 (2d Cir.1982), *cert. denied*, 464 U.S. 818 (1983) .................................................................................................... 4

**OTHER AUTHORITIES**

Brunet, Edward, "Class Action Objectors: Extortionist Free Riders or Fairness
Guarantors," 2003 U. CHI. LEGAL F. 403 .............................................................................. 9

**INTRODUCTION**

The Class's reaction to the settlement has been overwhelmingly positive. Although there are more than 118,000 class members, only two objected. (*See* Dkt. No. 81, Declaration of Jay Geraci ["Geraci Decl."] ¶¶ 13-14.) The objectors represent only 0.00168% of the Class. This Court has held where there is such a small negative response, it demonstrates overwhelming support for the settlement. *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460-461 (D.N.J. 2008) (citing *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990)); *see also Myers v. Medquist, Inc.*, No. 05-4608, 2009 WL 900787, *12 (D.N.J. Mar. 31, 2009) (noting that based on the low number of objectors and opt-outs, the court held that it was "justified in assuming more than 98% of the Class Members" approved the settlement).

The same is true here. The fact that only 0.00168% of the class had a negative response is a testament to the fairness, reasonableness, and adequacy of the settlement. Of the two objections, one objector asserts that the settlement should also include payments for the "frustration and aggravation" caused by the Convertible Top Defect, while the other is a list of boilerplate objections filed by a notorious serial objector. Both of these objections lack merit and should be overruled.

**LEGAL ARGUMENT**

**POINT I**

**THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS, WHICH OBJECTORS HAVE NOT REBUTTED**

In evaluating the reasonableness of the proposed Settlement, the district court "must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995); *Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  "And the Proposed Settlement must be assessed as a whole; the Court cannot extricate an individual provision" from the Settlement.  *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F. Supp. 450, 549 (D.N.J. 1997); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (it is the settlement, "taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

The views of the class are important and should be considered, though the court must be careful not to infer too much from a small number of objectors to a sophisticated settlement.  *See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F. 3d 283, 318 (3d Cir. 1998).   Indeed, an initial presumption of fairness applies to the review of a proposed settlement where the settlement negotiations occurred at arm's length, there was sufficient discovery, the proponents of the settlement are experienced in similar litigation, and only a small fraction of the class objected.  *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004).

All four of the *Warfarin* conditions are satisfied here, as explained in greater detail in Plaintiffs' Motion for Final Approval.  (*See* Dkt. No. 78.)  First, the Parties engaged in extensive, arm's-length negotiations: through multiple telephone conferences; in a status and settlement conference before Magistrate Judge Mark Falk on August 26, 2015; during a full-day mediation with Hon. Edward A. Infante (Ret.) of JAMS; and then, following the mediation, through further negotiations with the assistance of Judge Infante.  (*See* Dkt. No. 78-1, Declaration of Matthew Mendelsohn in Support of Plaintiffs' Motion for Final Approval ["Mendelsohn Decl. I"] ¶¶ 4-6.)

Second, the Parties engaged in substantial discovery, including propounding and responding to written discovery and reviewing voluminous documents produced by BMW in this case (*e.g.*, technical specifications of the convertible top system; owners' manuals; service and repair manuals; maintenance and warranty manuals; technical service bulletins; warranty repair invoices; warranty reimbursements; service records; Class Vehicle sales data; warranty data; emails and other internal communications, and consumer complaint reports). In all, BMW produced thousands of documents. Additionally, Plaintiffs took a deposition pursuant to Fed. R. Civ. Pro. 30(b)(6) of a BMW witness regarding the Convertible Top Defect and BMW's efforts to address it. Class Counsel also retained and consulted with experts, and Defendants inspected one of Plaintiffs' vehicles. (Mendelsohn Decl. I ¶ 3.)

Third, Class Counsel are well-versed in consumer class action litigation in general, and automobile defect class action litigation in particular. (*See* Dkt. No. 77-2, Declaration of Matthew Mendelsohn in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses and Incentive Awards ¶¶ 30-33; Dkt. No. 77-3, Declaration of Payam Shahian in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses and Incentive Awards ¶¶ 2-9; Dkt. No. 77-4, Declaration of Dara Tabesh in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses and Incentive Awards ¶¶ 2-7.)

Fourth, the Claims Administrator mailed a total of 118,984 notices to Class Members, but, to date, has received only two objections. (*See* Geraci Dec., ¶¶ 7, 14.)[1] Stated differently, only 0.00168% of the Class objected. This is a miniscule number of objections. *In re Cendant Corp. Litigation*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong

---

[1] Under the Settlement, the deadline to object was June 19, 2017. (*See id.* ¶ 14.)

presumption that this factor weighs in favor of settlement ….").   In contrast, the Claims Administrator has received 2,503 timely-filed claim forms (and 60 late-filed claim forms and counting)—a testament to the Settlement's welcome reception among Class Members.  (*See id.* ¶ 12.)  Notably, this number does not even include the people who will receive the software update at BMW dealerships (because a claim form is not necessary to receive the update).

In short, because the settlement negotiations occurred at arm's length, there was sufficient discovery, the proponents of the settlement are experienced in similar litigation, and only a small fraction of the class objected, the Settlement Agreement is entitled to a presumption of fairness.

Objectors bear the burden of proving any substantive assertion they raise that challenges a settlement's reasonableness.  *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (citing *Moore v. City of San Jose*, 615 F.2d 1265, 1272 (9th Cir. 1980) ("In this circuit, we have usually imposed the burden on the party objecting to a class action settlement.")).  Objectors must raise "cogent factual objections to the settlement."  *Weinberger v. Kendrick*, 698 F. 2d 61, 79 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983); *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448, 464 (2d Cir. 1974) (holding that objectors must make a "clear and specific showing that vital material was ignored by the District Court"), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43, 50 (2d Cir. 2000).

The two objections here are not well taken and should not alter the Court's conclusion that the Settlement is fair and reasonable.

## POINT II

### THE COURT SHOULD OVERRULE THE OETTING OBJECTION

Through their objection, Douglas C. Oetting and Bernadette R. Oetting (the "Oettings") seek the following: (a) a cash payment of $352.27 for a documented convertible top repair

performed by a BMW authorized dealer on March 14, 2011; (b) a cash payment of $500 for a convertible top repair performed by a third party; (c) a $15,402.34 cash payment for a new convertible top; and (d) a cash payment for "a reasonable set amount for each year since the defect happened, six years total, for: 1) The <u>frustration and aggravation</u> of not having full use in the operation of the convertible topo, 2) The <u>frustration and aggravation</u> due [to] the fact our car has always been under market value for the last six years and has prohibited us from recapturing any investment by selling the car because of this defect, 3) The <u>cost of the car</u> for the last six years as if it was a fully functional car (insurance, maintenance, storage, etc.) even though it could be used only during fair weather days with the top down."  (*See* Dkt. No. 75 (the "Oetting Objection"), emphases in original.)

Plaintiffs note that the Settlement already offers the Oettings some of what they are asking for.  As a threshold matter, the Settlement entitles a Class Member to full reimbursement for out-of-pocket expenses incurred for up to two repair attempts for the Convertible Top Defect, regardless of whether the repairs were performed by an authorized BMW Center or a third-party repair facility in the United States.  (*See* Agr. § B.1.)  Accordingly, the Oettings, so long as they furnished adequate proof of the repairs, would be entitled under the Settlement to cash reimbursements for the $352.27 and $500 repairs.[2]   In short, the Oettings' request for reimbursement is already addressed by the Settlement Agreement.

 Similarly, the Settlement Agreement also provides for a software update that remedies the Convertible Top Defect.  (*See* Agr. § III.B.1.)  Thus, the Oettings may simply present their vehicle

---

[2] The Oettings have attached a repair order/invoice for the $352.27 repair, which is sufficient for the purposes of reimbursement.  Although the Oettings claim to not have a record/receipt with respect to the $500 repair, nothing prevented them from obtaining such documentation from the third-party service center in order to provide the necessary documentation.

to a BMW repair facility for the update, obviating the need for a new convertible top.  If the top fails again within a year of the update, the Extended Warranty will allow the Oettings to receive additional repairs free of charge.  (*See id.* § III.A.2.)

Finally, the Oetting Objection also seeks relief *in addition* to that offered under the Settlement Agreement: *e.g.*, cash payments for "frustration and aggravation."  Although Class Counsel understand the desire for benefits beyond that afforded under the Settlement, that desire, standing alone, is not an obstacle to settlement approval.  *See Hanlon*, 150 F.3d at 1027 ("[T]hat the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise.").  *See also Officers for Justice*, 688 F. 2d at 624 ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (quotation omitted); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) ("Contrary to the objectors' expectations, the settlement is not a wish-list of class members that the [defendant] must fulfill. These . . . objectors fail to understand that the form and amounts of benefit provided were arrived at as a result of hard-fought negotiations between experienced class action attorneys. Plaintiffs' counsel, having weighed the risks of proving liability and damages at trial, negotiated . . . benefits in an amount and form that, in their judgment, would compensate plaintiffs . . . .").[3]

In *Henderson v. Volvo Cars of North America*, LLC, 2013 WL 1192479 (D.N.J. March 22, 2013), the plaintiff alleged that a design defect in 2003-2005 Volvo XC90 T6 vehicles caused the

---

[3] *And see Glass v. UBS Financial Servs., Inc.*, No. 06-4068, 2007 WL 221862, *6 (N.D. Cal. Jan. 26, 2007) ("Settlements by their very nature are not intended to provide full compensation for the claimed losses and consequently cannot be calculated with the same precision as actual damages*."); Browne v. Am. Honda Motor Co., Inc.*, No. 09-cv-06750, 2010 WL 9499072, *18 (C.D. Cal. July 29, 2010) ("While the proposed settlement does not perfectly compensate every member of the class, it is unlikely that any settlement of the claims of a class of more than 740,000 members would achieve such a result.").

vehicles' transmission to malfunction or fail shortly after the expiration of the 4-year/50,000-mile standard warranty. *Id.* at *1. The parties entered into a settlement agreement under which Volvo agreed, among other things, to extend the original warranty. *Id.* at *2. Certain class members raised objections to the settlement, arguing that the mileage cut-off of the proposed extended warranty was arbitrary, that they had to replace their transmissions after the cut-off, and that generally, their transmissions often experienced issues after the cut-off. *Id.* at *8. The court overruled these objections, finding insufficient mere complaints that a settlement should have been better, and noting that class members who objected to the adequacy of relief had the option of opting out of the settlement and pursuing individual claims against Volvo. *Id.*

Here, the Parties agreed to the terms of the Settlement only after extensive arm's-length negotiations. During the settlement negotiations, Plaintiffs carefully weighed the goal of obtaining the maximum recovery for the most Class Members against the risks of non-recovery, as well as Defendants' position that vehicle manufacturers do not have an obligation to guarantee that parts will not fail beyond the warranty period—and further, that no vehicle will last forever. *See Cipollone*, 505 U.S. at 525 ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.")[4] This compromise allows Class Members to receive reimbursements and extended warranty repairs now, rather than years down the road and avoids the risk that some or all of the Class would recover nothing at all.

Accordingly, the Court should overrule the Oetting Objection.

---

[4] Courts have held that "the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer…" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008), *aff'd* 322 F. Appx. 489 (9th Cir. 2009), and that repairs for defects that first manifest outside of the warranty period are ordinarily the consumer's responsibility.

## POINT III

## THE COURT SHOULD OVERRULE THE SIBLEY OBJECTION

### A.    Mr. Sibley is a Serial Objector

Serial objectors, like Mr. Sibley,

> subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors…

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). *See also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("What is less frequently observed is that the [class action settlement] process provokes into action an interesting group of professional objectors, who seem to have a variety of agendas, some not always apparent").

Legal experts have likened this practice to extortion and ransom, because in most of these situations, the objectors have no intention of conveying any benefit to the class. Judges routinely complain about serial objectors "who seek out class actions to simply extract a fee by lodging generic, unhelpful protests" (*Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 973-74 & n.18 (E.D. Tex. 2000)), and who "maraud proposed settlements—not to assess their merits but in order to extort the parties ... into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *Snell v. Allianz Life Ins. Co.,* No. 97-2784 (RLE), 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000). "[N]umerous courts…have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010). "[P]rofessional objectors can levy what is

effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (quotations omitted, alteration in original).

As one commentator has stated, class action objectors are "the least popular parties in the history of civil procedure." *See also* Brunet, Edward, "Class Action Objectors: Extortionist Free Riders or Fairness Guarantors," 2003 U. CHI. LEGAL F. 403, 438-42 (providing a summary of several scholarly and judicial commentaries on objector "blackmail").

A review of Mr. Sibley's various objections reveals the following: the boilerplate, formulaic nature of the objections, which regurgitate the same challenges *ad nauseam* across different cases (*see* Plaintiffs' Request for Judicial Notice ("RJN"), Nos. 1-21); the geographical spread of the objections, reflecting the nationwide scope of Mr. Sibley's objection operation; and the failure of any of these objections to add any value whatsoever to any of the challenged settlements (and the concomitant harm to the class as a result of the delay occasioned by a meritless objection). Further, a pattern emerges from Mr. Sibley's objections: once a court (inevitably) overrules Mr. Sibley's meritless objection, Mr. Sibley immediately files an appeal of the settlement approval, which is then typically withdrawn or rejected at the Circuit level. Thus, if this Court overrules Mr. Sibley's objection and finally approves the settlement, it can expect Mr. Sibley to file a notice of appeal of the final approval order, thereby further delaying relief to the Class.

Mr. Sibley's objections are so numerous, in fact, that they figure prominently in the Federal Judicial Center's 2013 "Study of Class Action Objector Appeals in the Second, Seventh, and Ninth Circuit Courts of Appeal" (*see* RJN Ex. 22) and, according to the Serial Objector Index, Mr. Sibley

ranks 24th nationally in the number of overall objections (*see* RJN Ex. 23). During the last seven-year period, for example, Plaintiffs have been able to locate 13 objections that he has filed, either as objector or counsel for the objector:

| RJN | Case | Jurisdiction | Date | Mr. Sibley's Role | Disposition of Objection/Appeal |
|---|---|---|---|---|---|
| Ex. 1 | Alin v. Honda | D.N.J. | 2/27/2012 | Counsel for Objector | Overruled |
| Ex. 2 | Alin v. Honda | 3d Cir. | 5/11/2012 | Counsel for Appellant | Voluntarily Dismissed |
| Ex. 3 | In re: HP Laserjet Printer | C.D. Cal. | 1/3/2011 | Objector | Overruled |
| Ex. 4 | In re: HP Laserjet Printer | 9th Cir. | 9/26/2011 | Appellant | Voluntarily Dismissed |
| Ex. 5 | In re: Apple Inc. Securities | N.D. Cal. | 1/24/2011 | Counsel for Objector | Voluntarily Dismissed |
| Ex. 6 | In re: Bayer Corp. | E.D.N.Y. | 2/12/2013 | Counsel for Objector | Overruled |
| Ex. 7 | In re: Bayer Corp. | 2d Cir. | 5/13/2013 | Counsel for Appellant | Voluntarily Dismissed |
| Ex. 8 | In re: Countrywide Financial | 6th Cir. | 2011 | Counsel for Appellant | Voluntarily Dismissed |
| Ex. 9 | In re: Johnson & Johnson | D.N.J. | 10/5/2012 | Counsel for Objector | Overruled |
| Ex. 10 | In re: Nutella | D.N.J. | 6/11/2012 | Objector | Overruled |
| Ex. 11 | In re: Online DVD-Rental | N.D. Cal. | 2/13/2012 | Counsel for Objector | Overruled |
| Ex. 12 | In re: Online DVD-Rental | 9th Cir. | 4/30/2012 | Counsel for Appellant | Settlement Approval Affirmed |
| Ex. 13 | In re: Southwest Airlines | N.D. Ill. | 4/15/2013 | Counsel for Objector | Overruled |
| Ex. 14 | In re: Southwest Airlines | 7th Cir. | 11/11/2013 | Counsel for Appellant | Dismissal, Failure to Pay Docketing Fee |
| Ex. 15 | In re: Blue Buffalo | E.D. Missouri | 4/14/2016 | Objector | Overruled |
| Ex. 16 | In re: Blue Buffalo | 8th Cir. | 7/18/2016 | Appellant | Settlement Approval Affirmed |
| Ex. 17 | Kolinek v. Walgreens | N.D. Ill. | 7/17/2015 | Objector | Overruled |
| Ex. 18 | Kolinek v. Walgreens | 7th Cir. | 12/13/2015 | Appellant | Settlement Approval Affirmed |
| Ex. 19 | Steinfeld v. Discover | N.D. Cal. | 1/16/2014 | Objector | Overruled |
| Ex. 20 | Union Asset Management | W.D. Tex. | 6/15/2010 | Counsel for Objector | Overruled |
| Ex. 21 | Union Asset Management | 5th Cir | 8/6/2010 | Counsel for Appellant | Settlement Approval Affirmed |

(*See* RJN, Exs. 1-21.)  This list only includes cases Plaintiffs could locate online and does not include the likely many additional cases filed in state courts or in cases where Mr. Sibley was not referenced by name.  It does not feel like an exaggeration to suggest that Mr. Sibley waits by the mailbox for a class notice to arrive, and then, once one arrives, reflexively files an objection.

Although courts often consider the history of professional objectors who lodge objections for improper purposes, *e.g.*, to extract a fee by delaying recovery to the Class, Plaintiffs understand that Mr. Sibley's status as a serial objector, in and of itself, is not dispositive of his objections here. A brief consideration of his objections, however, is all that is necessary to understand their many manifest defects.

10

### B.      The Sibley Objection Is Facially Defective

Mr. Sibley's objection fails to comply with all necessary requirements and is therefore

invalid.  Pursuant to the Settlement Agreement,

> To be valid, an objection … must provide a detailed list of *any* other
> objections to any class action settlements submitted in any court,
> whether state, federal, or otherwise, in the United States in the
> *previous five (5) years*.  []  Any Settlement Class Member … who
> has not filed an objection in complete accordance with the deadlines
> and other specifications set forth in this Settlement and the Class
> Notice, will be deemed to have waived any objections to the
> Settlement and will be barred from speaking or otherwise presenting
> any views at the Final Approval Hearing.

(Agr. § VI.A., emphasis added.)  Perhaps recognizing that his history of objections does him little

credit, Mr. Sibley has failed to comply with the requirement to list all his prior objections in the

past five years.  Mr. Sibley, **a practicing attorney**, asserts that he has objected to only two

settlements in the past five years: *Kolinek v. Walgreen Co.* and *In re Blue Buffalo Marketing and*

*Sales Practices Litigation*.  This is inaccurate.  At a minimum, Mr. Sibley neglected to cite his

January 16, 2014 objection in *Steinfield v. Discovery Financial Services*, or his June 11, 2012

objection in *In re: Nutella Marketing and Sales Practices Litigation*.  Having failed to provide a

complete list of objections in the past five years, Mr. Sibley has waived any objections to the

Settlement and the Court should specifically hold that his objection is invalid.[5]

### C.      The Notice Plan was Adequate and Appropriate

The substance of Mr. Sibley's objection is as meritless as his history of filing serial

"canned" objections would lead one to expect.  For example, the thrust of Mr. Sibley's "Notice"

objection is that "class members are left with no method to determine if the notice provisions meet

---

[5] As an officer of the court, Mr. Sibley is held to an even higher standard than a layperson
objector.  Mr. Sibley's purposeful failure to disclose the complete list of objections he has filed is
a violation of his Rule 11 obligations and sanctionable conduct.

the requirements" and that "[t]he Notice Plan, as presented, does not come close to giving the notice required by Fed. R. Civ. P. 23(c)."  (See Sibley Objection §§ 8-10.)  This is but one of the standard objections in Mr. Sibley's repertoire—one that he has employed in numerous other objections—and demonstrates that Mr. Sibley did not read the Settlement Agreement, which indicates that a Claims Administrator has been retained to search the application registration databases to identify the last known addresses of all Class Members.  (See Agr. § IV.A.; and see Dkt. No. 81, Geraci Declaration ¶¶ 4-5 [describing, in detail, the creation of the Class List by running vehicle identification numbers associated with the Settlement through the DMV databases from all 50 states; the processing of names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service; and the sequencing the records in the databases].)

Additionally, as discussed in Point III.D. of Plaintiffs' Brief in Support of Final Approval, a settlement website was established (www.ConvertibleTopSettlement.com) that provides answers to frequently asked questions, provides all relevant settlement documents (including the notices and claim forms), and provides the contact information for the settlement administrator and counsel.  (See Dkt. No. 78-3 at 8.)  This Court has found such notice to be sufficient.  See, e.g., Dewey v. Volkswagen of Am., 728 F.Supp.2d 546, 571 (D.N.J. 2010).

Finally, the fact that Mr. Sibley is a former owner and received notice is evidence that the notice was effective and complete.  (See Dkt. No. 76, Sibley Objection ¶ 3 (Mr. Sibley conceding that "[h]e received by United States mail a Notice and Claim form.").)

## D.    There are no Intra-Class Conflicts

In another "canned" objection, Mr. Sibley asserts that there is an "intra-class" conflict. This objection is clearly one that Mr. Sibley simply decided to "cut and paste" from his past

objections (*see, e.g.*, RJN Ex. 1 [Sibley Objection in *Alin*]), because it makes absolutely no sense in this case. In fact, it is not even clear what conflicts Mr. Sibley alleges are present.

To the extent that Mr. Sibley's complaint is that class members who make a valid claim will be reimbursed, while those that do not make a claim will not receive reimbursement, that is not an intra-class conflict. Even if class members were entitled to unequal relief—which is not the case here—that also would not constitute an intra-class conflict. The Third Circuit has rejected the proposition that unequal relief establishes the existence of a conflict. In language that is instructive here, the Third Circuit explained its reasoning in *In re Pet Food Prods. Liab. Litig.*:

> We rejected objectors' argument that the fact that the fund was allocated so that a greater percentage of the settlement value was designated for certain class members demonstrated a conflict between groups. We found that the difference in allocations was simply a reflection of the extent of the injury that certain class members incurred and did not clearly suggest that the class members had antagonistic interests.

629 F.3d 333, 347 (3d Cir. 2010) (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009)); *see also In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 395 (3d Cir. 2004).

Moreover, Mr. Sibley's "intra-class equity" objection is, at base, an argument that the Class does not satisfy the typicality and commonality requirements of Rule 23. (*See* Sibley Objection § 13 ["This Settlement unfairly and arbitrarily benefits some class members at the expense of others without any justification that satisfies Fed. R. Viv. P. 23(a)'s certification requirements."].) This objection, however, has essentially been rendered moot by the Court's preliminary approval order, which found that the Class satisfied the commonality and typicality requirements for the purposes of settlement. (*See* Dkt. No. 74, Preliminary Approval Order, at § 3.)

### E.   Plaintiffs Have Presented a Reasonable and Conservative Settlement Value

Mr. Sibley suggests that the requested attorney fees are unreasonable because the value of

the Settlement to the Class is "overstated."[6]  To the contrary, Plaintiffs' expert, Kirk D. Kleckner,

indicates that his valuation of the Settlement and its components—the software update, warranty

extension, and reimbursement campaign—was "conservative in nature."  (*See* Dkt. No. 77-5,

Kleckner Decl. ¶ c, d(iv), and e.)

In any event, the Supreme Court has unequivocally held that in a class action settlement,

attorney fees should be awarded based upon the value of the benefits made available to the class

as a whole, and not merely the benefits actually claimed:

> In this case, the named respondents have recovered a determinate
> fund for the benefit of every member of the class whom they
> represent. . . .  **Their right to share the harvest of the lawsuit**
> upon proof of their identity, **whether or not they exercise it, is a**
> **benefit in the fund created by the efforts of the class**
> **representatives and their counsel**.  Unless absentees contribute to
> the payment of attorney's fees incurred on their behalves, they will
> pay nothing for the creation of the fund and their representatives
> may bear additional costs.  The judgment entered by the District
> Court and affirmed by the Court of Appeals rectifies this inequity
> by requiring every member of the class to share attorney's fees to
> the same extent that he can share the recovery.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 480, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citations

omitted) (emphasis supplied).

In *Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423 (2d Cir. 2007), the Second

Circuit Court of Appeals held that the district court's failure to adhere to this clear legal mandate

constituted reversible error:

> In this case, the District Court calculated the percentage of the Fund
> on the basis of the claims made against the Fund, rather than on the
> entire Fund created by the efforts of counsel. We hold that this was
> error.

---

[6] Mr. Sibley simultaneously concedes, however, that he does not know the value of the
Settlement.  (*See* Sibley Objection n. 3.)  These two assertions are mutually incompatible.  Mr.
Sibley may not simultaneously claim that he does not know the value of the Settlement and that it
is "overstated."

\*                    \*                    \*

> The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. **An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, <u>whether claimed or not</u>**.

*Id.* at 436-37 (emphasis supplied).  In short, the full value of the various elements of the Settlement are properly included in the valuation of this Settlement, and that valuation need only equate to a reasonable estimate.

Mr. Sibley also contends that "[t]his settlement smells like a coupon settlement with a small component for reimbursement."  (*See* Sibley Objection § 15.)  This objection fundamentally misunderstands the nature of a coupon settlement within the meaning of the Class Action Fairness Act.  A coupon settlement "involve[s] a discount—frequently a small one—on class members' purchases from the settling defendant."  *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 950-51 (9th Cir. 2015) (affirming settlement approval over objections, including Sibley Objection).  "These discounts require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services."  *Id.* at 951.  *But see In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603, at \*2–4 (W.D.Mo.2011) (holding that a settlement that provides class members with vouchers to obtain new products was not a coupon settlement because the vouchers do not require class members to spend their own money and do not require class members to purchase the same or similar products as those that gave rise to the litigation).  The instant Settlement does not involve a discount on Class Members' purchases from Defendant.  Rather, the Settlement provides, outright, a software update, cash reimbursement for convertible tops repairs, and a warranty extension—each of which is categorically different from a discount.

Finally, Mr. Sibley mischaracterizes the Settlement as a "sales promotion," despite the fact that Class Members are entitled to a free software update, a warranty extension, full reimbursement for two convertible top repairs, and full reimbursement for a convertible top replacement—all without the need for further purchases of any kind.  (*See* Dkt. No. 76, Sibley Objection ¶ 17.)  Mr. Sibley's speculation that BMW might pressure Class Members into purchasing additional goods and services when they receive their software updates or convertible top repairs is completely unfounded.  This Settlement gives BMW no greater opportunity to market its products and services than BMW already has whenever BMW owners bring their vehicles to a dealership for service, and, more fundamentally, it is hard to imagine how BMW could provide Class Members with software updates or convertible top repairs other than through its dealers' service departments.

### F.    Class Members Were Provided Adequate Opportunity to Object to the Request for Attorneys' Fees

Mr. Sibley asserts that, under Rule 23(h), it was improper for the Court to set an objection deadline prior to the date for Plaintiffs' fee application.  Despite this sweeping assertion, Mr. Sibley has cited no Third Circuit decisions directly standing for such a proposition.  Instead, Mr. Sibley cites an inapplicable Ninth Circuit case in support of his argument that objection deadlines should be set after the deadlines for filing final approval motions.  *See In re: Mercury Interactive Corp Securities Litig.*, 618 F.3d 988 (9th Cir. 2010).  **Of course, a Ninth Circuit requirement is irrelevant to what is required, and what is not required, in the Third Circuit.**

Indeed, the *In re Mercury* "rule is not universal, and the rule has been rejected by at least one other Circuit."  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) (citing *Cassese v. Williams*, 503 Fed.Appx. 55, 57 (2d Cir.2012)).  In *Saccoccio*, the court's preliminary approval order set the objection deadline for January 15, 2014.  *Id.* at 699.  Class counsel filed its application for attorney's fees afterwards, on January 27, 2014.  *Id.*  An objector,

citing *In re Mercury*, argued that this timing violated Rule 23(h). *Id.* The court, however, rejected the application of the *In re Mercury* rule, finding that class counsel had complied with Rule 23(h) because (1) the preliminary approval order stated that class counsel would apply for attorney's fees not to exceed $20 million, the class notice likewise stated that the attorneys would apply for fees not to exceed $20 million, and class counsel in fact applied for fees in the amount of $20 million; (2) the objectors had over two weeks between the fee application and the final fairness hearing, sufficient time to "crystalize their objections" and request further information before attending the fairness hearing; and (3) the objector was represented by an attorney who stated his attention to appear.

The facts here parallel those in *Saccoccio* and *Cassese*. The preliminary approval order here stated that Class Counsel would apply for attorney's fees not to exceed $1,869,000, the Class Notice likewise stated that the attorneys would apply for fees not to exceed $1,869,000, and Class Counsel in fact applied for fees in the amount of $1,869,000. Objectors will have had over seven weeks between the June 26, 2017 fee petition and the August 15, 2017 final fairness hearing (and over three weeks between the fee petition and original July 20, 2017 final fairness hearing date), more than enough time for Mr. Sibley to crystallize his objections. Finally, Mr. Sibley is himself an attorney with extensive experience in objecting to class action settlements. Rule 23(h) is therefore satisfied here.

The sole Third Circuit authority cited by Mr. Sibley, *In re Nat'l Football League Players Concussion*, 821 F.3d 410, 446 (3d Cir. 2015), discussed the Rule 23(h) timing issue in *dicta*. And, more important, **the court adopted a position <u>opposite</u> the one Mr. Sibley takes**: namely, that setting the objection deadline prior to the fee petition deadline "is not necessarily a violation of Rule 23(h)[.]" (*See id.* at 447.) Rather, the court found that so long as a class notice contains sufficient information to enable class members to make informed decisions, due process is satisfied:

> The class notice here was sufficient to comply with due process. The notice advised that the NFL would pay attorneys' fees from a separate fund and not object to an award up to $112.5 million and that the District Court would consider fees after final approval and afford retired players an opportunity to object.  From this, class members knew from where the fees for class counsel were coming (a separate fund), what the NFL's position on fees would be (no objection up to $112.5 million), and could ballpark the size of class counsel's eventual fee request (a betting person would say it will be close to $112.5 million). Even if the class members were missing certain information—for example, the number of hours class counsel worked and the terms of any contingency fee arrangements class counsel have with particular retired players—they still had enough information to make an informed decision about whether to object to or opt out from the settlement.

*Id.* at 446.

Similarly, the class notice here comports with due process.  The notice specified the "high-low" agreement concerning attorney fees and that the District Court would consider fees after final approval and afford Class Members an opportunity to object.  From this, Class Members knew from where the fees for class counsel were coming (a separate fund), what Defendant's position on fees would be (no objection up to $944,000), and could ballpark the size of class counsel's eventual fee request (up to $1,869,000).  Even if the class members were missing certain information—for example, the number of hours Class Counsel worked—they still had enough information to make an informed decision about whether to object to or opt out from the settlement.

Accordingly, the Court should rule that the Sibley Objection is invalid and will not be considered, or in the alternative, if the Court does consider the Sibley Objection, it should be overruled.

## CONCLUSION

The Parties have negotiated a fair, reasonable, and adequate settlement, and neither the Oetting nor Sibley Objections alter that conclusion.  Accordingly, the Court should overrule the objections and finally approve the Settlement.[7]

Dated:  July 13, 2017

Respectfully submitted,

_____
Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net

---

[7] If the Court overrules the objections and finally approves the Settlement, Plaintiffs will move for the imposition of an appeal bond to the extent any objectors file appeals.  Recently, Mr. Sibley, as part of the "Sibley Group," appealed the final approval of a settlement in the District of New Jersey after his objection was overruled, and the court (Hon. Freda L. Wolfson) imposed an appeal bond partly on the grounds "the Objectors appear to be objectors who repeatedly raise objections in class actions around the country, [] suggest[ing] that their appeal in this case is meritless."  *In re Nutella Mktg. & Sales Practices*, No. CIV.A. 11-1086 FLW, 2012 WL 6013276, at *2 (D.N.J. Nov. 20, 2012), *aff'd sub nom. In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53 (3d Cir. 2014).