UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT GRAY and MARKUM GEORGE, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC and BMW AKTIENGESELLSCHAFT,<br><br>Defendants. | Civ. No. 13-cv-3417 (WJM)<br><br>OPINION |

Plaintiffs Robert Gray and Markum George brought this putative class action against BMW of North America and BMW Aktiengesellschaft ("BMW" or "Defendants") on May 31, 2013. Plaintiffs allege that BMW 6-Series vehicles produced between 2004 and 2010 contain one or more defects that prevent the convertible top from functioning properly. On February 17, 2017, the Court certified the class for the purpose of settlement and preliminarily approved the parties' proposed settlement agreement. This matter now comes before the Court on Plaintiffs' motion for final settlement approval and Plaintiffs' motion for attorneys' fees, expenses and incentives. A fairness hearing was held on August 15, 2017. *See* Fed R. Civ. P. 23(e)(2). The Plaintiffs' motion for final approval is **GRANTED** and the Plaintiffs' motion for attorneys' fees is **GRANTED in part**.

I.  BACKGROUND

On May 31, 2013, Plaintiffs Robert Gray and Makrum George ("Plaintiffs") brought this suit on behalf of themselves and other similarly situated persons or entities who currently own or lease, or previously owned or leased, a model-year 2004 to 2010 BMW 6 Series (E64) Convertible (the "Class Vehicles"). Plaintiffs allege that the Class Vehicles contain one or more defects that cause the convertible tops to stop functioning properly. On May 28, 2014, this Court dismissed four of the seven claims asserted in the First Amended Complaint ("FAC"). *See* ECF No. 21. The parties proceeded with discovery in connection with the Plaintiffs' claims for common law fraud, violation of California's Consumer Legal Remedies Act, and a violation of California's Unfair Competition Law.

Discovery following from the parties Rule 26(f) hearing included document production by BMW, third-party discovery requests on several BMW dealerships, and the deposition of a BMW employee regarding the alleged defects and BMW's efforts to rectify them. This was followed by a full-day mediation before the Honorable Edward A. Infante (Ret.) and telephone and in-person conferences with Magistrate Judge Mark Falk.

The parties executed a settlement agreement (the "Settlement") on October 26, 2016. ECF No. 66-2. The Settlement provides three forms of relief:

- Within one year of the Settlement's effective date, all current owners and lessees of Class Vehicles may arrange for a software update at a BMW facility that addresses the convertible top defect.
- A one-year unlimited-mileage extended warranty from the date of installation of the repair.
- Reimbursement for out-of-pocket expenses incurred by former and current owners and lessees for up to two attempts at repairing the convertible top defect, so long as appropriate documentation is provided.

On February 17, 2017, the Court issued an order preliminarily approving the Settlement; certifying the class[1] for the purposes of settlement; and directing the parties to disseminate class notice by April 18, 2017, pursuant to Rule 23 of the Federal Rules of Civil Procedure.[2] The Court appointed Kurtzman Carson Consultants ("KCC") as the Settlement Administrator.

KCC worked with Experian Automotive to generate a list of Class Members using Vehicle Identification Numbers (VIN). After processing the names and addresses through the National Change of Address Database, KCC identified 111,614 Class Members and disseminated printed notices to 118,984 addresses. Declaration of Jay Geraci ¶¶ 4-6. As of July 5, 2017, KCC had received 2,492 timely claim forms along with 57 untimely claim forms. Declaration of Daniel Z. Rivlin in Response to Plaintiffs' Motion for Fees ¶ 4. Six Class Members opted out and two filed objections, both of which are addressed below. The Court held a fairness hearing on August 15, 2017. See ECF No. 84. Neither objector appeared, although the Court reviewed the grounds for both objections. The Court reserved judgment on the motion for final approval of the settlement as well as the motion for attorneys' fees.

---

[1] The Order defined the Settlement Class as: "All persons or entities in the United States, the District of Columbia, and Puerto Rico who currently own or lease, or previously owned or leased, a mode-year 2004 to 2010 BMW 6 Series (E64) Convertible." ECF No. 74.

[2] Because the Court in its February 17, 2017, Order found that the prerequisites for Fed. R. Civ. P. 23(a) and (b)(3) had been satisfied, there is no need to conduct an additional analysis for class certification at this time. Again, certification has been granted solely for the purpose of settlement.

## II. DISCUSSION

Settlement agreements are entitled to "initial presumption of fairness" when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir.), as amended (May 2, 2016) All four criteria are satisfied here. Having held a fairness hearing pursuant to Rule 23(e)(2), the Court now reviews the nine factors articulated in *Girsh v. Jepson* to determine whether the settlement is "fair, adequate and reasonable." 521 F.2d 153 (3d Cir. 1975). These include:

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Girsh*, 521 F.2d at 157. The Court examines each factor below and finds the Settlement to be reasonable.

### I. The *Girsh* Factors

#### i. Complexity and duration of the litigation

First, *Girsh* asks the Court to consider the complexity, expense and likely duration of the litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir.2001)). This case has been in federal court for over four years. A contentious battle over class certification would likely have ensued absent settlement. Were certification successful, Defendants would likely have moved for summary judgment. The Court agrees that this factor weighs in favor of approving the settlement.

#### ii. Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether the members of the Class support the settlement." *McLennan*, 2012 WL 686020, at *6. The Convertible Top Defect allegedly implicates 30,000 vehicles owned or leased by an estimated 111,614 class members. As of June 21, 2017, the Settlement Administrator received timely claims from 2,315 class members, while six members had opted out and two have objected. "Although the small number of negative responses is not dispositive, it certainly weighs in favor of final approval." *McLennan*, 2012 WL 686020 at *6.

### iii. The Stage of Proceedings and the Amount of Discovery Completed

The stage of proceedings and amount of discovery indicates whether the parties "had adequate appreciation of the merits of the case before negotiating." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*G.M. Trucks*"), 55 F.3d 768, 813 (3d Cir. 1995). Once again, this action has been the subject of litigation in federal court for more than four years. Discovery has taken place—including large document productions, interrogatories, and one deposition—and the parties engaged in arm's length negotiations. *See Bell-Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993). Plaintiffs have submitted affidavits stating that roughly 1,400 hours have been logged by Class Counsel litigating this matter. The third *Girsh* factor favors approval of the Settlement.

### iv. Risk of Failing to Establish Liability and Damages

"The risks surrounding a trial on the merits are always considerable." *McLennan*, 2012 WL 686020 at *6. BMW vigorously disputes the merits of Plaintiffs' claims. A trial would likely provoke conflicting expert testimony over technical issues and require resolution of difficult issues of law and fact, including whether BMW had "knowledge" of the alleged defect. The Court finds that the attending risk of failing to secure liability and damages weighs in favor of approving the settlement.

### v. The Risk of Maintaining the Class Action through Trial

Rule 23 allows a court to decertify or modify a class at any time during litigation. *See* Federal Rule of Civil Procedure 23(c)(1)(C). It is far from certain that Plaintiffs' class would survive the "rigorous analysis" of certification. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). For instance, the Court could find that the class is too broad to comport with the predominance requirement of Rule 23(b). *See, e.g.*, *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 373 (3d Cir. 2015) ("uniform evidence cannot be used to establish predominance as to both new and used owners of the Class Vehicles because the applicable warranties between the groups may vary."). This factor weighs decidedly in favor of approving the Settlement.

### vi. The Ability of Defendants to Withstand a Greater Judgment

Certainly BMW could withstand a much greater judgment, but this fact has marginal relevance unless the ability of a defendant to survive a judgment is central to the negotiation process. *See McLellan*, 2012 WL 686020, at *7 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)). BMW's resources do not affect the Court's determination to approve the Settlement.

vii. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The Settlement is reasonable in light of the best possible recovery and the attendant risks of litigation. The Settlement allows the owner and lessee of a Class Vehicle to receive a software update that will cure the convertible top defect. The update will come with a one-year extended warranty in the event that the defect recurs. The Settlement also provides Class Members with reimbursement for repair costs for up to two repair attempts, even those attempts made by third parties, and for reimbursement of out-of-pocket expenses incurred to replace the convertible top entirely. Agr. § III.B. Plaintiffs' expert Kirk D. Kleckner estimates the total value of the Settlement to be $8.5 million, exclusive of administrative costs. Importantly, the Settlement does not preclude future claims against BMW for personal injury or subrogation arising from the conduct subject to this litigation. Agr. §VII(E).

## II. Objections to the Proposed Settlement

i. The Oettings' Objection

The Oettings own a 2005 6-Series BMW (E64), which they bought used in 2011. Declaration of Jay Geraci, Ex. A.[3] They have been unable to consistently use their car with the top down because of the convertible top failure. They spent $352.27 on one repair and an additional $500 on a second failed attempt at repair. The Oettings object to the Settlement on the grounds of their "total lack of trust and confidence" in BMW to administer the repairs. Instead, the Oettings request compensation reflecting "the total value of the car over the six-year period of their ownership as if it were fully functional." While understandably frustrated, the Oettings' objection provides no basis for disturbing the settlement in this case, which elicited only one additional objection. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). As Defendants indicate, the two out-of-pocket expenses incurred by the Oettings are eligible for reimbursement if supported by necessary documentation. *See* Pl. Response to Objections 5. Perhaps an ideal settlement would provide additional monetary compensation and additional relief for the Oettings' frustration, but settlements are by definition the product of compromise, and the possibility "that a settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The Oettings' objection is overruled.

ii. The Sibley Objection

Gary Sibley leased a 2009 BMW 6 Series (E64) convertible and returned the car at the termination of his lease period. Geraci Decl. ¶ 6. Sibley, whom Defendants refer to as

---

[3] The Oettings indicated that they have never objected to a class action settlement. They did not attend the August 15, 2017, fairness hearing.

"notorious serial objector," objects that notice was generally inadequate; that approval would violate the Supreme Court's intra-class requirements; that the requested attorney fees are unreasonable and based on an overstated valuation of the Settlement; and that the deadline for objections preceded the application for attorneys' fees and thus prevented class members from making informed objections to the fee request.

First, the Court disagrees that notice was inadequate. *See* Rule 23(c)(2)(B). The Claims Administrator searched application registration databases to identify the last known addresses of all Class Members. Notice consisted of website providing prospective Class Members with information about the suit; a paper notice mailed to class members along with claims forms; and a toll-free telephone number established to field inquiries regarding the litigation. *See* Geraci Decl., Ex. B. ¶¶ 4-12.

Second, Sibley argues that the Settlement "unfairly and arbitrarily benefits some class members at the expense of other," and thus violates the principle of "intraclass equity." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999). For instance, Sibley argues, Class Members who have disposed of their vehicle are prejudiced because of the Settlement's "restrictive requirements to obtain out of pocket expense." Geraci Decl., Ex. B ¶ 13. The Court disagrees that the reimbursement requirements are unduly restrictive. As Plaintiffs stated at the fairness hearing, those who have not retained their own repair records may simply contact the dealership that performed the repairs to obtain documentation.

Third, Sibley argues that the value of the Settlement relief is vastly overstated because only a small percentage of Class Members will actually take advantage of the Settlement. As Plaintiffs argue, however, the relevant measure is the value of benefits made available to the class as a whole, not the portion of benefits ultimately claimed by class members. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("Their right to share the harvest of the suit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

Finally, Sibley argues that because the deadline for objections was earlier than motion for attorneys' fees, objectors were not given an opportunity to make an informed objection to the fees. According to Sibley, this violates Rule 23(h). The only Third Circuit case discussing this issue does so in dicta. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2015). The Court finds that Class Members had ample time between the June 23, 2017, fee request filing and the August 15, 2017, fairness hearing to prepare objections. Moreover, the notice to Class Members—as well as the Court's preliminary approval order—stated that the upper limit on attorneys' fees was $1,869,000 under the parties' "high-low" agreement. Thus, although detailed information about how the requested amount was calculated was not provided until June 23, 2017, potential objectors were on notice that the request would likely amount to roughly $1.8 million. *See id.* at 446. For that reason, the Court is satisfied that notice procedures in this case did not violate Rule 23 or due process.

## III. Attorneys' Fees

The parties agreed to award fees in an amount within the range of $944,000 and $1,869,000 (inclusive of $65,078.79 in expenses), subject to the Court's discretion. Doc. No. 66-2, Ex. 1A, Settlement Agreement. The agreement states that BMW's payment of attorneys' fees and costs "will be paid separate and apart from any relief provided to the Settlement Class." *Id.*, § VIII(A). Class Counsel are requesting $1,803,921.21, representing 20.8% of $8,666,000, the value of the settlement relief according to Plaintiffs' expert Kirk D. Kleckner. *See* Declaration of Kirk. D. Kleckner, ECF No. 77-5. Defendants oppose the fee request on grounds that it should have been calculated using the "lodestar" method and that the requested is based on an inflated valuation of the Settlement. Defendants argue that the Court should award $944,000, the minimum agreed upon under the high-low agreement.

### i. Methodology for Calculating Fees

Percentage-of-recovery is normally applied in cases involving a "common fund" as opposed to a "claims-made" settlement, which usually calls for application of the lodestar method. *McLennan v. LG Electronics USA, Inc.*, No. 2:10-cv-03604 (WJM), 2010 WL 686020 (D.N.J. Mar. 2, 2012). "A lodestar award is calculated by multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Oh v. AT&T Corp.*, 225 F.R.D. 142, 153 (D.N.J. 2014). This method "has appeal where . . . the nature of the settlement evades the precise evaluation needed for the percentage of recovery." *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). "Regardless of the method a court applies or the specific factors considered, the fundamental requirement is that any fee be fair and reasonable." *See McLellan*, 2010 WL 686020, at *9.

The Court agrees that Plaintiffs have mischaracterized the relief obtained by Class Counsel as a "common fund." *See* Black's Law Dictionary 17(c) (10th ed. 2014) (defining "common fund" as "[a] monetary amount recovered by a litigant or lawyer for the benefit of a group that includes others, the litigant or lawyer then being entitled to reasonable attorney's fees from the entire amount."). No specific monetary figure has been set aside to provide relief to the class; rather, the Settlement Agreement permits class members to make individual claims in order to obtain relief. *See McLellan*, 2010 WL 686020, at *10. Attorney fees and expenses are not being drawn from a pool of money recovered by the plaintiffs. Although expert testimony for the Plaintiffs pins the estimated value of the settlement at $8.6 million, this approximation does not somehow transform the relief into a fund. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998) (finding that the lodestar method may be appropriate if "the settlement ... cannot reasonably be valued") ; *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 735

(E.D. Pa. 1995) (applying the lodestar multiplier rather than percentage-of-recovery method where the expected benefit of class relief was "difficult to monetize").

  ii. <u>Applying the Lodestar Method</u>

Multiplying the numbers of hours counsel worked by a reasonable hour rate establishes the lodestar. *McLellan*, 2010 WL 686020, at *10. A court may reduce a lodestar multiplier that is excessive in light of the relief obtained by a settlement. *Lazarska v. Cty. of Union*, No. CIV.A.04-02602 (WGB), 2006 WL 2264455, at *7 (D.N.J. Aug. 8, 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The Court "has a great deal of discretion to adjust the fee award in light of [] objections." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Three firms shared the responsibility of class counsel in this case, together committing 1,396.2 hours to this action. The Court has reviewed the hourly rates of counsel and finds them to be reasonable and consistent with standard rates in this region's legal services market. Multiplying the number of hours worked by counsels' hourly rates generated a lodestar of $752,307.50. *See* Mendelsohn Decl. ¶ 43. Dividing this number into the total fees sought by counsel ($1,803,921.21) results in a lodestar multiplier of 2.4, a number that falls within the range of multipliers often approved in this circuit. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (noting that multipliers between one and four are often approved in this Circuit).

In this case, however, a 240% increase over counsels' normal hourly rates is unreasonable in relation to the relief obtained under the Settlement Agreement. For one, the Settlement does not account for Class Members who may have sold or returned their defective vehicles rather than seek a software update which did not then exist. *See* Mendelson Supp. Decl., Ex. A at 63:21-64:23. Further, the estimated value of the software update relates to the cost of repair without accounting for the damages actually incurred by Class Members prior to the development of the software update, which Plaintiffs sought in their amended complaint. *See* ECF No. 10, FAC p. 35. While the Court does not question the number of hours class counsel devoted to the litigation, the Plaintiffs' fee request is also excessive in light of the relatively limited discovery conducted by Class Counsel; counsel conducted only one deposition and participated in one settlement conference before Judge Falk and a single day of mediation with Judge Infante.

The Court finds that a more reasonable reward is $1,128,461.25, exclusive of the $65,078.79 in costs. This figure rewards class counsel with 150% of their actual claimed fees ($752,305), thus preserving the premium necessary to induce attorneys to assume the risk of contingency-fee representation, without overstating the value of the relief obtained in this case or the amount of discovery required to obtain it. *See Steiner v. Hercules Inc.*, 835 F.Supp. 771, 791 (D. Del. 1993). *See also Lazarka*, 2006 WL 2264455 at *9 (awarding multiplier of 1.2 as opposed to requested multiplier of 1.5); *Colbert v. Trans Union Corp.*,

No. CIV. A. 93-6106, 1997 WL 550784, at *1 (E.D. Pa. Aug. 22, 1997) (reducing award from requested amount $129,209.60 to $73,147.35).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for final settlement approval and **GRANTS in part** Plaintiffs' motion for attorney fees and costs. The Court awards counsel with $1,128,461.25 in fees and $65,078.79 in costs, for a total award of $1,193,540.04.


      /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**August 24, 2017**